[L. A. No. 7369. In Bank.—July 5, 1923.]

## JOHN H. REES et al., Respondents, v. MARY L. REES, Appellant.

[1] DEEDS—DELIVERY—UNDUE INFLUENCE—EVIDENCE.—In this action to set aside certain deeds on the ground that as to one it was not delivered, and as to the others that they were procured by undue influence, it is held that the evidence was sufficient to support the findings of the trial court sustaining these contentions.

[2] ID.—EVIDENCE—ACTS AND DECLARATIONS OF GRANTOR.—Where the very question at issue is whether or not the alleged grantor has parted with his title by making an efficient delivery of his deed, his acts and statements material to the question of delivery during the entire period of an escrow of the deed may be proven.

APPEAL from a judgment of the Superior Court of Los Angeles County. J. P. Wood, Judge. Affirmed.

The facts are stated in the opinion of the court.

Smith & Breslin for Appellant.

W. D. Von Nostran and C. Ibeson Sweet for Respondents.

KERRIGAN, J.—This is an appeal from a judgment in an action to set aside certain deeds on the ground that as to one it was not delivered and as to the others that they were procured by undue influence.

Mary L. Rees was the third wife of Lewis Rees. They were married October 2, 1907. Lewis Rees died March 2, 1920, at the age of eighty years. At the time of his death he left surviving him six children by a former marriage. His widow, Mary L. Rees, had one daughter living, issue of a former marriage. She had no children by Lewis Rees. On the third day of September, 1919, Lewis Rees made and

2. Admissibility of declaration of grantor after conveyance as to delivery of deed, note, Ann. Cas. 1916E, 713.

Right of grantor to revoke deed delivered to stranger, to be delivered by him to grantee after grantor's death, notes, 4 L. R. A. (N. S.) 816; 9. L. R. A. (N. S.) 317.

Sufficiency of evidence of delivery of deed found in grantor's possession after his death, note, Ann. Cas. 1914C, 858.

acknowledged a deed of gift to Mary L. Rees, his wife, of twelve parcels of real property situated in Los Angeles County. On the same day, with the knowledge of his wife, Lewis Rees deposited this deed with his attorney, Joseph Smith, with instructions to hold it until his death and then to deliver the same to Mary L. Rees. On September 17, 1919, Lewis Rees made eight other deeds of gift, conveying the same property described in the deed of September 3d. Two of these deeds conveyed to his wife six parcels of said real property, and were delivered directly to her on the day the deeds bear date. The other six deeds conveyed six lots to his children.

After the death of Lewis Rees the special administrators of his estate commenced an action against Mary L. Rees to set aside and cancel the two deeds of September 17th in her favor, on the ground that Lewis Rees was at the time of executing the same mentally incompetent to execute such deeds, and that the execution thereof was procured through the undue influence of said grantee. At the time of filing that action none of the children of deceased, including the special administrators, had any knowledge whatever of the existence of the deed of September 3d. On the day the summons and complaint were served on Mary L. Rees in that action she caused to be recorded the deed of September 3d, conveying to her all the real property theretofore belonging to Lewis Rees. Thereupon the plaintiffs commenced a second action to set aside and cancel the deed of September 3d, the allegations in this action being practically the same as those in the first one, and further alleging that all of the property conveyed in the deed of September 3d was the property of the estate of decedent, and asking that the title thereto be quieted. Mary L. Rees answered both complaints, specifically denying all the material allegations therein, and filed a cross-complaint in both actions, alleging that she was the owner of all of the said property, and asked that title thereto be quieted in her. In filing her cross-complaint Mary L. Rees brought in all of the children of the deceased, and they individually answered the cross-complaint, denying the material allegations therein. By stipulation these actions were consolidated for trial.

The trial court found that the deed of September 3d had never been delivered by Lewis Rees to Mary L. Rees. The

court further found that on September 10, 1919, Lewis Rees suffered a severe stroke of apoplexy, which, although not rendering him totally incompetent to transact business, still left him in a very weak and debilitated mental and physical condition; that prior to suffering the stroke of apoplexy Lewis Rees had great confidence in his wife; that she took advantage of his condition and the confidence he reposed in her and unduly influenced him to deliver to her the two deeds of September 17th.

[1] The only question seriously discussed in the briefs is: Does the evidence sustain the findings of the trial court? We think it does.

Referring to the deed of September 3d, it is clear that the evidence supports the finding that the decedent did not intend to deliver that deed without the power of revocation. His conduct, as well as the conduct of defendant after the deed was made, supports this view. Two weeks after the making of that deed Lewis Rees, with the consent and approval of Mary L. Rees, made a different disposition of the property, and thereafter and until the action to set aside the deeds to defendant of September 17th was commenced, she relied entirely on the latter deeds. According to her testimony she had not questioned his right and power to make and deliver the deeds of September 17th. In fact, these deeds to the children were not only signed by her, but, according to evidence in the case, they were made at her request. In one instance she said she had been working for a month to have him make those deeds to his children. At another time, when one of the children hesitated to accept a deed, she said: "You keep still, accept that deed, I worked on your father all night to get him to make it."

It also appears in evidence that Lewis Rees called his children to what proved to be his deathbed, and stated in the presence of his wife that she was to have only a life estate in the property conveyed to her, and that after her death the property was to be divided among his children and her daughter, share and share alike. Certainly he would not have done this if he had intended to make an absolute conveyance of his property to Mary L. Rees. The surrounding circumstances, the conduct of the parties after the making of the deed of September 3d, all indicate that Lewis Rees never intended to part with the dominion over his

property. It is quite likely, as said by the trial court, that he intended to do with his property as many do, make a deed effective upon his death but subject in the meantime to his control and dominion.

[2] All this evidence was clearly admissible. It was relevant and material to show the intention of the deceased as to the question of delivery "where the very question is whether or not the alleged grantor has parted with his title by making an efficient delivery of his deed, his acts and statements material to the question of delivery during the entire period of the escrow may be proven." (*Smith* v. *Smith*, 173 Cal. 725 [161 Pac. 495]; *Williams* v. *Kidd*, 170 Cal. 631, 648 [Ann. Cas. 1916E, 703, 151 Pac. 1].)

Coming now to the deed of September 17th, concerning which the court found that it was obtained by Mary L. Rees from Lewis Rees by undue influence and coercion, the evidence shows that he had been seriously ill for some little time before he suffered the stroke of paralysis on September 10th, and it cannot be gainsaid that from that time until his death he was mentally and physically weak and debilitated. Indeed, before the making of the deed of September 17th, he had suffered a second stroke. During most of the time after he was first stricken he was helpless, and he required to be "cared for like a baby." Mentally he appeared to have lost his initiative. As a rule he would speak only when spoken to, and then answered only in monosyllables.

It was Mrs. Rees who suggested the making of the deeds and, doubtless, the distribution of the property. It was she who secured the blank forms of deed, who sent for the notary public to fill out the blanks and to acknowledge the conveyances, and who in most of the instances delivered the deeds to the respective grantees. She initiated, took charge of, and conducted the entire matter of the distribution of the property and obtained thereof for herself property worth about forty-nine thousand dollars, while the children collectively received property worth about four thousand dollars, thus receiving about three times the amount to which she would otherwise be entitled, for the property was the separate property of the deceased, and he died intestate.

Doubtless it was the understanding between Lewis Rees and his wife that she should enjoy the property conveyed to her for the period of her life with remainder over to

her daughter and to his children, for he in effect so stated to his children in her presence and hearing, and by her silence she acquiesced in what he there said. In fact, a few days after the death of Lewis Rees she was asked by Henry J. Hortsman, her brother-in-law, if she had made "a will as Lewis wanted you to do," and she said, "I made one, but I destroyed it." On at least two occasions Mr. Hortsman urged Mary L. Rees to make a will leaving the property to her daughter and to the children of the deceased, as had been intended, "and to take the widow's share." To this advice she gave no heed, and on the occasion of the last conversation she said that "I have it [the property], and why should I give it up?" She also requested Hortsman and his wife to forget what they had heard and not to tell all they knew, referring to a conversation heard by them between her and the deceased as to what was to be done with the property.

The testimony of the appellant was not the testimony of a person innocent of the charges made in the complaint. She asserted and denied matters later contradicted or admitted, which conduct showed a guilty conscience.

There are several places in the record where it appears that hers was the dominating will so far as the deceased was concerned. It appeared that the deceased had become old and feeble; that his physical and mental powers were weak and waning; that he was an easy victim for a designing person in whom he had confidence, and it further sufficiently appears that the defendant, his wife, influenced him to make the deed to her by promising to make a will leaving the property to her daughter and to his six children. This promise she did not keep and she apparently never intended to keep it.

Judgment affirmed.

Lawlor, J., Seawell, J., Waste, J., Myers, J., Wilbur, C. J., and Richards, J., *pro tem.,* concurred.