[Sac. No. 4201. In Bank.—February 19, 1930.]

THE NORTHERN CALIFORNIA CONFERENCE AS-
SOCIATION OF THE SEVENTH DAY ADVEN-
TISTS (a Corporation), Appellant, v. THEO. SMITH
et al., Respondents.

Devlin & Devlin and Armfield & Eddy for Appellant.

Huston, Huston & Huston and Thomas B. Leeper for Respondents.

THE COURT.—Plaintiff, Northern California Conference Association of Seventh Day Adventists, appeals from a

judgment decreeing that defendant Theodore Smith is the owner and entitled to the possession of certain real property situate in the county of Yolo, and that it has no right, title or interest therein, and that it take nothing. Plaintiff is a religious corporation organized to advance the doctrines of the Seventh Day Adventists faith.

Said plaintiff and defendant Theodore Smith claimed title by separate deeds from Sarah C. Hays. The conveyance to plaintiff of an undivided one-half interest in said property was executed by Mrs. Hays, then over seventy years of age, on June 8, 1923. She left said conveyance with the attorney who prepared it with instructions to deliver it to the grantee upon her death. Mrs. Hays died in December, 1924, and said attorney delivered the deed to representatives of plaintiff soon thereafter. Plaintiff raises the point in its reply brief that there is no evidence that the deed to plaintiff was not given for a valuable consideration, but was a gift. We think it clearly and indubitably appears from the nature and circumstances of the case that there was no consideration for the conveyance. It seems unlikely that the corporation even knew of the deed to it until after Mrs. Hays' death.

Defendant Smith claimed title to the entire estate in the premises under a deed deposited by Mrs. Hays with the Bank of Italy as an escrow-holder on November 2, 1922, seven months before the execution of the deed to plaintiff, and the delivery of said deed to him after the death of Mrs. Hays upon his payment, on October 1, 1925, of $12,000 in cash and the execution of a note for $16,500 secured by a deed of trust on the property, in accordance with the terms of the escrow agreement. He learned of the deed to plaintiff after the death of Mrs. Hays, but before he elected to perform the terms of the escrow agreement.

Defendant Viola M. Rablin, administratrix of the estate of Sarah C. Hays, deceased, denied in her answer that plaintiff corporation had any interest in said premises and denied that her claim was without right, or that she had no right or title in said lands, but she did not set forth the nature or extent of the interest claimed, nor pray that it be adjudged that she, as administratrix or individually, was the owner of said lands, but only that plaintiff take nothing and for such other relief as might seem equitable.

Upon this appeal plaintiff states that although upon the record it would be entitled to a judgment as against all of the defendants, including defendant Smith, adjudging it to be the owner of an undivided one-half interest in said property, it is willing to recognize the rights of Smith provided judgment is ordered in its favor against the defendant Rablin, both individually and as administratrix, decreeing that she holds in trust one-half of the moneys received from Smith in payment of the purchase price of said property and also a half interest in the note and deed of trust given to secure the balance of the price.

Plaintiff claims the right to a sum of money and to an interest in the said note for $16,500, secured by deed of trust, in lieu of the land. It may be questioned whether the pleadings are appropriate for such recovery. The allegations of the complaint are in the usual form of suits to quiet title, averring ownership of specific real property by plaintiff and a claim of interest by defendants, which is without right. By the prayer of the complaint plaintiff seeks a determination of title and does not apply for a decree establishing a trust in a sum of money and a note secured by deed of trust. Conceding for purposes of discussion that the form of the pleadings is not a bar to the relief here sought, any substantive right which plaintiff may have is dependent upon the deed to it having been executed by a competent grantor and validly delivered. The case was tried before a jury, which found, in response to special interrogatories, that the deed to plaintiff was the product of the delusions of a deceased mind, and that when Mrs. Hays left the deed with the attorney who prepared it she did not intend to part with control over it, from which it would follow that there was no delivery. While there are grounds for contending that the evidence will not support the jury's verdict that the deed was the product of delusions, we will not here decide that question for the reason that we prefer to place our decision of affirmance on the ground that the deed was never delivered. It will be necessary, however, to briefly review the evidence bearing on the question of mental capacity for the aid it furnishes in determining the question of delivery.

At the time of the execution of the deed of plaintiff, June 8, 1923, Mrs. Hays resided in the city of Sacramento at the

home of her widowed daughter, the defendant Viola M. Rablin, and contributed to the expense of maintaining the household. The property described in said deed consisted of 160 acres of farm land near the city of Woodland, with the home place where Mrs. Hays and her husband had resided for many years. Eighty acres of said land had been devised to her by said husband, who had died many years previously, and the other eighty acres had been received from the estate of a deceased daughter, who had received it under her father's will. It would appear that Mrs. Hays possessed no other property except personal property of inconsequential value. By the will of said husband an eighty-acre tract was devised to each of their seven children.

For many years Mrs. Hays had been a member of the Seventh Day Adventist Church and a staunch supporter of the doctrines and precepts of that faith. During the period of her residence with her daughter the activities of said church unquestionably furnished the dominating interest in her life. She was regular in attendance upon church meetings and zealous in the missionary work of the body. No other members of the family were affiliated with, or interested in, said church.

The evidence as to her relations with her children, especially with the defendant daughter, with whom she had resided since 1920, is relied upon as indicating mental incapacity to a degree sufficient to vitiate the deed to plaintiff. The testimony of Mrs. Rablin, corroborated by neighbors and friends, would indicate that the mother had developed many of the attributes of character not infrequently associated with advancing years. She continually complained to her daughter and to neighbors that said daughter and her sons did not show her any consideration or kindness, and that her daughter had a very unpleasant disposition. When the daughter took the mother to task for complaining to neighbors, the mother denied having made any complaints or unkind statements. Upon several occasions she claimed that her daughter or other members of the household had stolen articles of small value belonging to her. When the articles were found where Mrs. Hays had left them, she accused her daughter of having replaced them. Even after the finding of the misplaced or lost articles the

mother stated to persons outside the family that they had been stolen.

Upon one occasion, which was after the execution of the deed to plaintiff, the mother, without informing the daughter, left the daughter's house and rented a flat near by. The next day she returned and requested her daughter to permit her to come back. Upon her return she voluntarily told the daughter that all she owned should pass to her when she died. She was frequently heard pacing back and forth in her room and mumbling to herself in a rather loud tone of voice.

The daughter's testimony would indicate that she exerted her best efforts to provide her mother with a comfortable and harmonious home, and that the mother's unhappiness was due to her own unfortunate disposition. The daughter further testified that she assisted her mother in all business transactions, both in regard to the ranch property here involved and in other matters.

The deed to plaintiff was prepared by one G. P. Hurst, Esq., a Woodland attorney, who had known Mrs. Hays for twenty-five years. He prepared a will for her in May, 1923. A few weeks after its execution she again called at his office and stated that she had concluded to dispose of her property by deeds, as somebody had told her wills were easily broken. There is no clear evidence as to the contents of said will, which was destroyed by Mrs. Hays after the deed to plaintiff was executed, but there are references in the testimony of Mr. Hurst and one other witness from which it may be inferred that said property or an interest therein was devised to plaintiff.

Mrs. Hays told said attorney that her children had been sufficiently provided for, that one or two of them had not made good use of the property they had, and that they had not shown due courtesy and kindness to her. She also recounted the supposed theft of her property by members of the family. She told him nothing of the deed deposited in escrow which defendant Smith was entitled to receive upon the payment of the price fixed in the escrow agreement. Said attorney states that he endeavored to impress on Mrs. Hays that it was difficult to break a will if it was properly drawn and the maker was legally competent; that he explained to her that the delivery of a deed to be good

must be absolute; that a will would not divest her title, but under a deed title would pass to the grantee and she could not reclaim the deed, or thereafter convey the property. Mrs. Hays persisted in executing a deed. It was placed in an envelope and left with Mr. Hurst, the following instruction being written on the envelope:

"Give the within deed to the grantees on my death.
"Date, June 8/23.

"MRS. S. C. HAYS."

Shortly after the death of Mrs. Hays in December, 1924, Mr. Hurst delivered the deed to the representatives of plaintiff corporation.

The advice given by her attorney was sound. ■ The effect of a valid delivery made to a third person with a direction to deliver the deed to the grantee upon the death of the grantor, is to immediately cut down the estate of the grantor to a life estate. ■ A deed by its delivery is beyond the power of the grantor to recall and the grantor is thereafter without power to divest the grantee of the estate in remainder created by its deposit with a third person. ■ If the grantor intends to retain control of the deed or of his rights of property, including the rights of disposition and control, until his death, with the intention that the depositary shall deliver the deed to the grantee upon the death of the grantor only in the event that the grantor shall not have recalled it, or made other disposition of the property, delivery is lacking. (*Bury* v. *Young,* 98 Cal. 446 [35 Am. St. Rep. 186, 33 Pac. 338]; *Kenney* v. *Parks,* 125 Cal. 146 [57 Pac. 772]; *Stone* v. *Daily,* 181 Cal. 571 [185 Pac. 665]; *Donahue* v. *Sweeney,* 171 Cal. 388 [153 Pac. 708].) In such a case the deed can only be considered as an attempted testamentary disposition which must fail because the formalities for the execution of a will have not been complied with.

The conduct of Mrs. Hays subsequent to the execution of the deed to plaintiff reveals a lack of intent that the deed should become operative upon being left with Attorney Hurst to cut down her estate to a life interest, and hence a failure of delivery. ■ While evidence of the declarations, acts and conduct of a grantor made after he has parted with title and in disparagement of it is inadmissible, subsequent acts of the grantor may be proven for the pur-

pose of showing the intent of the grantor at the time the deed was placed in the hands of a third person. (*Williams* v. *Kidd,* 170 Cal. 631 [Ann. Cas. 1916E, 703, 151 Pac. 1] ; *Donahue* v. *Sweeney, supra.*)

Mrs. Hays leased the premises to defendant on November 2, 1922, for a term commencing on that date and terminating on October 1, 1923. Smith immediately entered into possession, farming the land, and continued in possession at all times thereafter. On November 2d, Mrs. Hays also deposited the deed to Smith with the Bank of Italy as an escrow-holder, with instructions to deliver to Smith upon his payment of the price previously agreed upon between Smith and herself on or before October 1, 1923. On July 18, 1923, the lease and time for the exercise of the option to purchase were extended in writing to October 1, 1924, and on September 30, 1924, the time was extended to October 1, 1925. On that date Smith paid the sum of $12,000 in cash and executed a note and deed of trust for $16,500 payable to the administratrix, of the estate of Mrs. S. C. Hays, whereupon the deed dated November 2, 1922, was delivered to him.

Smith testified that at the time of the extension granted July 18, 1923, which date was about a month after the execution of the deed to plaintiff, he took Mrs. Hays out to the ranch and talked the matter over with her, and she then asked him to stay with the matter. Upon other occasions, including the date of the extension given on September 30, 1924, she again requested him to continue and stated that she wished him to buy or that she would give him further extensions. She did not inform him of her deed to plaintiff. The defendant Mrs. Rablin corroborated the testimony of Smith as to Mrs. Hays' requests that he purchase the property.

J. R. Hays, a son of Mrs. Hays, testified that his mother told him two or three months before she died, and frequently before that time, that she wished to sell the property and asked him to direct prospective purchasers to her. She never informed said son or the defendant Mrs. Rablin of the deed to plaintiff corporation, but she told two friends, who were members of her church, that she had deeded her property to the church.

The effect of the deed to plaintiff, if a valid delivery was made to Attorney Hurst, was to immediately cut down the estate of Mrs. Hays to a life estate. By the escrow agreement previously entered into, Smith had bargained for the right to acquire an estate in fee upon his election to pay the stipulated price, and Mrs. Hays, following the execution of the deed to plaintiff, requested him to complete the purchase and offered to and did extend the time for the exercise of the option, thereby holding herself out as owner of the fee. She made no mention to Smith of the deed to plaintiff. The only satisfactory explanation of her conduct is that she did not intend that her rights in said property during her lifetime, including the right of disposition, should be abridged or changed and an estate vested in plaintiff by the execution of the deed left with her attorney, Mr. Hurst. By the answer "No" made to the special interrogatory as to whether Mrs. Hays intended to part with control over said deed when she gave it to Mr. Hurst, the jury placed a construction upon the facts and circumstances which finds support in the evidence. An intent that the deed should be immediately effective to diminish the estate of the grantor was an essential of a valid delivery.

In explanation of the action of Mrs. Hays in urging Smith to complete his purchase after the execution of the deed which, it is contended, cut down her estate to a life interest, appellant states that a person may contract to sell, and give an option on, property belonging to another, or may contract to dispose of a greater interest than he himself owns, with the expectation of thereafter acquiring the estate offered in order to make a conveyance. But evidence which would sustain a finding of such an intent on the part of Mrs. Hays is entirely lacking. Neither can it be inferred, under any reasonable construction of the evidence, that Mrs. Hays intended to vest an estate in appellant by the deposit of the deed with Mr. Hurst, but urged Smith to complete his purchase with a belief that the estate granted to appellant might be divested by Smith's exercise of his rights under the prior escrow agreement. We cannot attribute to Mrs. Hays technical legal knowledge as to the conflicting rights of appellant and Smith in such a situation, nor believe that she would seek to deprive her

grantee of an estate conveyed to it by urging another to exercise his rights under a prior contract.

While Mr. Hurst's testimony would indicate that he gave Mrs. Hays a clear explanation and endeavored to make her comprehend the ambulatory character of a will as compared with a deed, her subsequent conduct with relation to the property furnishes strong evidence that she failed to understand the full meaning of his remarks. Said attorney throughout his testimony stated that he persisted in restating his explanation to Mrs. Hays upon the several occasions when she called, for the reason that she gave no indications of comprehending him. While he may have believed that the effect of his repeated statements of the law was to finally make the point clear, the subsequent behaviour of Mrs. Hays, considering her age and clouded mentality, indicates the contrary.

The notion that a deed may serve as a substitute for a will without diminishing the grantor's estate during his lifetime is very prevalent. Mrs. Hays' statement to attorney Hurst that she wished a deed in place of the will previously executed because somebody had told her wills were easily broken, and her failure to tell Hurst of her contract with Smith, as well as the testimony of the two friends of Mrs. Hays, members of the Adventist Church, who testified to telling her that deeds were better than wills, indicates a likelihood of a belief on the part of Mrs. Hays that a deed would serve as a substitute for a will, and, like a will, would not affect her estate during her lifetime. While an explanation such as was given by Mr. Hurst should leave no doubt in the mind of the average person, Mrs. Hays was a woman over seventy years of age, who, if not inflicted with mental incapacity, as respondents contend, at least had displayed attributes of character and mind indicative of weakened powers of understanding.

In view of all the facts and circumstances, we cannot accede to appellant's contention that Mrs. Hays' persistence in executing a deed following the explanation of the effect of delivery by Mr. Hurst furnishes conclusive evidence of an intent that the deed should be immediately operative. We are of the opinion that the deed was never legally delivered to plaintiff or to anyone on its behalf. Hence plaintiff must fail in its claim to one-half of the moneys paid by

Smith on the purchase price of the land and to a half interest in the note, secured by deed of trust, given by him for the balance of said price.

Judgment affirmed.

Rehearing denied.

All the Justices concurred.