[Civ. No. 12250.   First Dist., Div. One.   Feb. 19, 1943.]

RICKARD B. DINNEEN, Appellant, v. DONALD YOUNGER, as Administrator, etc., et al., Respondents.

James A. Walker for Appellant.

Paul E. Colegrove, Wyckoff, Gardner & Parker, J. A. Wyckoff, Bert B. Snyder, Jerome D. Peters, Louis Oneal and Bias & Bias for Respondents.

PETERS, P. J.—Plaintiff, Rickard B. Dinneen, brought this action to quiet his title to a parcel of improved real property located in the city of Santa Cruz. One of the defendants, the administrator of the estate of Rose B. Dinneen, deceased wife of plaintiff cross-complained and asked that his title as administrator be quieted. From a judgment quieting the administrator's title plaintiff prosecutes this appeal.

Plaintiff claims title to the property, known as the Church Street property, by virtue of a deed of gift from his wife alleged to have been duly executed and delivered to him on July 14, 1932. Defendants do not deny that such a deed was executed by Rose Dinneen on that date, and do not deny that such deed was handed by Rose Dinneen to plaintiff, it being their contention that such deed was not handed to plaintiff with the intent to make a legal delivery. The trial court found that Rose Dinneen, on July 14, 1932, "signed and handed to said plaintiff" a deed naming plaintiff as grantee to the Church Street property, but that "it was not the intention of said Rose B. Dinneen, also known as Rose Clayton, deceased, when she handed said deed to said Rickard B. Dinneen, nor at any other time, to divest herself of the present title to said real property, nor was it then, nor at any other time, her intention to vest the present title to said real property in the said grantee named in said deed; that said deed was never delivered . . .," and by handing the deed to plaintiff Rose Dinneen did not "part or intend to part with her title in fee simple to the said described real property." The sole question presented on this appeal is whether that finding is supported by legal, competent evidence.

It should be here noted that in the event the judgment is affirmed plaintiff is not entirely divorced from any interest in the property in question for he has an interest as an heir of his wife.

The facts are as follows: Plaintiff, who was then fifty-eight years old, and Rose Dinneen, who was then at least sixty, were married early in July of 1932. Although plaintiff was not entirely clear as to the facts, it appears that on July 13, 1932, plaintiff and Rose Dinneen went to George Penniman, a notary public, and asked him to draw up gift deeds for the deeding from one to the other of certain parcels of real property owned by each as their separate property. Rose Dinneen owned the Church Street property valued at about $12,000, and subject to a $3,200 encumbrance. Plaintiff owned three parcels of property referred to as the Monterey property, the San Jose property and the Wildwood property. The total value of these three parcels was much less than the value of the equity in the Church Street property. On July 14, 1932, in the presence of Penniman, Rose Dinneen signed the deed naming plaintiff as grantee of the Church Street property, acknowledged her signature, and physically handed the deed to her husband. Plaintiff likewise executed certain deeds, and handed to his wife, in the presence of Penniman, gift deeds to the three parcels owned by him. None of the deeds was ever recorded. Plaintiff was unable to produce the deed to the Church Street property at the time of trial. He testified that, after receiving the deed, he placed it in a pocket of his automobile, and several months later put it in a deed box to which he alone had the keys; that later one of the keys was lost; that he then discovered the deed was gone; that he has never found it; that he does not know what became of it.

From plaintiff's testimony, the exact nature of the transaction that occurred on July 14, 1932, is not entirely clear. The deeds were all gift deeds. However, plaintiff apparently contends that the transaction was a business trade, that is, that he traded his property for that of his wife. Just why they should engage in such a deal does not appear. From all the testimony, and the reasonable if not inevitable inferences therefrom, it seems apparent that the deeds were executed and handed over in an abortive attempt to make a testamentary disposition of the property, and that neither the grantors nor grantees intended or believed that they were parting with or receiving title. This was the conclusion of the trial court.

Plaintiff testified that immediately after his marriage to Rose Dinneen they decided to make an extended motor trip;

that the deeds were prepared and handed to the respective grantees as above described; that the circumstances under which the deeds were prepared were that ''We were going on this trip and she said 'It will take quite a bit of money for the trip.' 'Well,' I says, 'I don't want to spend too much,'—I had between two and three thousand dollars at the time. She says 'Well, we will make deeds to each other; that way,' she said, 'you will be sure of a home at all times.' I said 'All right, and I will give you deeds to my property,' and that was the understanding.'' He testified that the Monterey property was reasonably worth $3,500; that the San Jose property was valued at $2,500, and the Wildwood lots were worth $600 or $700. This testimony as to value, as well as most of plaintiff's other testimony, was impeached by testimony produced by defendants (hereafter referred to) of such a nature that it frequently caused the trial judge to express doubt as to the credibility of the witness.

It is the contention of plaintiff that the above evidence conclusively establishes a valid legal delivery to him of the deed in question. Defendants, while admitting that the above evidence established a prima facie case of delivery, contend that the evidence produced by them, particularly relating to the acts of the parties subsequent to the execution of the deeds, supports the finding above quoted. Plaintiff urges that since the ''delivery'' was ''established,'' nothing done or said by the parties after such delivery could change the effect of such delivery, and that all the evidence concerning the subsequent acts and declarations of the parties was inadmissible, citing such cases as *Bury* v. *Young*, 98 Cal. 446 [33 P. 338, 35 Am.St.Rep. 186]; and *Shaver* v. *Canfield*, 21 Cal. App.2d 734 [70 P.2d 507]. This question presents the pivotal problem involved on this appeal.

██ There can be no doubt that upon proof that Rose Dinneen signed and acknowledged the deed and handed the same to the grantee, the plaintiff established a prima facie case of complete execution—that is, of delivery with intent to make the grant operative immediately as a transfer of title. (§ 1948, Code Civ. Proc.; *Burkett* v. *Doty*, 176 Cal. 89 [167 P. 518]; *Towne* v. *Towne*, 6 Cal.App. 697 [92 P. 1050]; *Thomas* v. *Fursman*, 177 Cal. 550 [171 P. 301]; *Merritt* v. *Rey*, 104 Cal.App. 700 [286 P. 510].) The presumption of legal delivery, thus created, is not conclusive. ██ The concept of delivery involves more than merely physically handing

possession of the deed to the grantee or someone on his behalf. (*Piercy* v. *Piercy*, 18 Cal.App. 751 [124 P. 561]; *Baker* v. *Baker*, 9 Cal.App. 737 [100 P. 892].) The act of delivery must be accompanied with the intent that the deed shall become presently operative as such, that is, must be accompanied with the intent to presently pass title, even though the right to possession and enjoyment may not accrue until some future time. (See cases collected 9 Cal.Jur., p. 153, § 52.) The rule applies not only where possession of the deed is given to a third person, but also where such possession is given to the grantee directly. (*Marple* v. *Jackson*, 184 Cal. 411 [193 P. 940]; *Stone* v. *Daily*, 181 Cal. 571 [185 P. 665]; *Hefner* v. *Sealey*, 175 Cal. 18 [164 P. 898]; *Cox* v. *Schnerr*, 172 Cal. 371 [156 P. 509]; *Bias* v. *Reed*, 169 Cal. 33 [145 P. 516]; *Kenney* v. *Parks*, 137 Cal. 527 [70 P. 556].) Intention to part with title is indispensable—that is the factor that gives vitality to the delivery. (*Ruiz* v. *Dow*, 113 Cal. 490 [45 P. 867]; *Williams* v. *Kidd*, 170 Cal. 631 [151 P. 1, Ann.Cas 1916E, 703], and see cases cited 9 Cal.Jur. § 52 at p. 155, fns. 19 and 20.)

▮ It is also clear that where a valid delivery is established, subsequent acts and declarations of the grantor in disparagement of his deed, outside the presence of the grantee, are not admissible. Such declarations or acts are hearsay and self-serving. (See cases cited *infra*.) ▮ But when the very question presented is whether or not the alleged grantor intended a valid delivery—that is, intended to divest himself of title—his declarations and acts made and done outside the presence of the grantee after physically delivering possession of the deed to the grantee or to a third person, are admissible as bearing upon the vital question of intent. This problem has frequently been before the courts of this state. The leading case is *Williams* v. *Kidd*, 170 Cal. 631 [151 P. 1, Ann.Cas. 1916E, 703], where an exhaustive review of the authorities is to be found. The court concluded as follows (p. 648):

''It is, of course, well settled that acts and declarations of a grantor made after he has parted with the title to property and in disparagement of it are inadmissible when made in the absence of the grantee, and it is the claim of appellants that the conduct and declarations of Williams after the deed

was handed to Kidd were inadmissible as contravening this rule.

"But here the very question was whether Williams had ever parted with title to the property. This was the main issue in the case, the claim of respondents being that there had been no delivery of the deed with intent on the part of Williams to do so. The conduct and declarations of Williams covered a period subsequent to the making of the deed and while Kidd held it as a depositary, and we are satisfied that such acts, conduct, and declarations of Williams with reference to the property during that period were properly admissible as bearing on the issue as to whether there had been a delivery of the deed. All these matters had some tendency to show that there was no intention on the part of Williams to deliver it except as a part of a testamentary scheme which he had abandoned.

"In support of their contention that these acts and declarations of Williams just referred to were inadmissible reliance is had by appellants on *Bury* v. *Young*, 98 Cal. 446 [35 Am.St.Rep. 186, 33 P. 338]. If that case is to be construed as holding that where the issue is whether or not the grantor so delivered his deed as to convey title, the acts and declarations, in short, the conduct, of the deceased grantor cannot be given in evidence in disproof of delivery, then we think that *Bury* v. *Young* should be overruled as contrary to sound reason and to the great weight of authority." It is true that the Williams case involved delivery to an escrow holder, but the rule is applied whether delivery be direct to the grantee or is made to a third person on his behalf. (For a few of the cases where the rule has been applied to various factual situations see *Donahue* v. *Sweeney,* 171 Cal. 388 [153 P. 708]; *Fisher* v. *Oliver,* 174 Cal. 781 [164 P. 800]; *DeCou* v. *Howell,* 190 Cal. 741 [214 P. 444]; *Rees* v. *Rees,* 191 Cal. 399 [216 P. 1006]; *Rocha* v. *Rocha,* 197 Cal. 396 [240 P. 1010]; *Cummings* v. *Eiszler,* 70 Cal.App. 67 [232 P. 723]; *Kinney* v. *Kinney,* 71 Cal.App. 192 [234 P. 913]; *Beyerle* v. *California Surety Co.,* 120 Cal.App. 236 [7 P.2d 1034]; *Manwell* v. *Board of Home Missions, etc.,* 122 Cal.App. 599 [10 P. 2d 787]; *Belser* v. *American Trust Co.,* 125 Cal.App. 344 [13 P.2d 951]; *Jean* v. *Jean,* 207 Cal. 115 [277 P. 313]; *Northern Cal. Conference Assn., etc.* v. *Smith,* 209 Cal. 26 [285 P. 314]; *Watt* v. *Copeland,* 92 Cal.App. 161 [267 P. 928]; *Mor-*

*gan* v. *Matthieson,* 103 Cal.App. 510 [285 P. 325]; *Meeker* v. *Spencer,* 41 Cal.App. 400 [182 P. 782]; *Goodman* v. *Goodman,* 212 Cal. 730 [300 P. 449]; *Barcroft* v. *Livacich,* 35 Cal. App.2d 710 [96 P.2d 951].)

■ Mr. Justice Traynor, in the recent case of *Whitlow* v. *Durst,* 20 Cal.2d 523 [127 P.2d 530], succinctly stated the applicable rule as follows (p. 524): "When intent is a material element of a disputed fact, declarations of a decedent made after as well as before an alleged act that indicate the intent with which he performed the act are admissible in evidence as an exception to the hearsay rule, and it is immaterial that such declarations are self-serving. Thus, in cases involving the delivery of deeds, declarations of the alleged grantor made before and after the making of the deed are admissible upon the issue of delivery, and it is immaterial that such declarations are in the interest of the party producing them. [Citing cases.] Likewise, in gift cases declarations made by the grantor before, contemporaneously, and subsequent to the alleged gift are admissible though the statements be self-serving." (See, also, annotations in 105 A.L.R. 398, particularly p. 410, et seq.; Ann.Cas. 1916E, 713; see, also, 19 Cal.L.Rev. 231, 251; 26 Cal.L.Rev. 631, 632.)

■ These cases establish beyond a doubt that where the very question at issue is whether the grantor intended a legal delivery, the subsequent acts and declarations of the parties are admissible. When a grantor or grantee subsequently deals with the property in a manner inconsistent with the theory of an effective delivery, such fact is of considerable importance in determining their probable intent. There are cases, of course, where the facts surrounding the delivery of physical possession of the deed are so conclusive that no other conclusion is possible but that a legal delivery was intended. In such event, the delivery cannot be attacked. Such are the cases relied upon by plaintiff. But the present case does not present such a situation. ■ Here the notary testified there was no conversation in his presence to indicate the parties' intent. He did not explain to the parties the legal nature or consequences of a legal delivery. All we know is, that the parties executed the deeds and handed them to each other. Such "delivery" is equivocal. It could mean that the parties intended to part with title. It could also mean that in view of the dangers of the contemplated trip the parties intended

the deeds to operate as wills and did not intend a present passage of title. Under such circumstances, evidence of their subsequent acts was clearly admissible on the issue of intent.

In the instant case, such subsequent acts, if they do not conclusively establish that there was no intent on the part of the respective grantors to divest themselves of title, to say the least amply support the finding to that effect. Some of these acts are as follows:

The purported delivery of the deeds took place on July 14, 1932. Rose Dinneen died August 14, 1937, and plaintiff became administrator of her estate. He served as such until December of 1939 when defendant Younger became administrator. In 1934 plaintiff sold the Monterey property, which he had testified was worth in 1932, $3,500, for $1,000. The purchaser paid $300 in cash and paid the balance in stock of a corporation. Although, according to plaintiff's story, he had deeded this property to his wife two years before, this stock was issued in the name of the plaintiff alone. This stock was called in by the issuing corporation in 1940. The proceeds so received were placed by plaintiff in his own bank account, and he has never accounted or offered to account to defendant, the present administrator, for this sum. He did not list the stock in his petition for letters of administration or in any of the three accounts filed by him before his resignation as administrator.

In April, 1937, the San Jose property, supposedly deeded by plaintiff to his wife, was sold to Ralph Skoog. Plaintiff had testified that in 1932 this property was worth $2,500, yet it was sold to Skoog for $950, $250 cash, and the balance was secured by a promissory note and deed of trust. The deed of trust named plaintiff as sole beneficiary and the note named plaintiff as payee. Rose Dinneen joined in the deed to Skoog. Skoog testified that no mention was ever made to him of any unrecorded deed, and that the matter of installment payments was discussed with plaintiff and not with his wife. Payments on the secured note were made by Skoog before and after Rose Dinneen's death. Plaintiff testified that he had accounted to the estate of his wife for these payments, but the production of his accounts showed that, although he was administrator, he had never accounted for these payments, and had not listed the note and deed of trust as an asset of the estate.

So far as the Wildwood property is concerned, that had not been sold at the time of the present trial. However, plaintiff did not list it in his petition for letters or in his accounts as an asset of the estate.

So far as the Church Street property—the parcel directly involved in this action—is concerned, the evidence shows that in November, 1934, the encumbrance on that parcel was renewed, and that the application for such renewal was signed by Rose Dinneen alone, although her husband did sign the deed of trust. After his wife died and plaintiff became administrator he made no claim that the Church Street property belonged to him. In his petition for letters, under oath, he alleged that the estate owned the property. In the inventory he listed the property as community property of himself and his wife. In his first and subsequent accounts he listed rentals of the Church Street property received by him as administrator of the estate. In the estate proceeding the Church Street parcel, plus the furniture in the house located thereon, were listed as practically the sole assets of the estate. He testified that he did all this, under oath, after disclosing all the facts concerning the deed from his wife to his then attorney, and upon his advice. The attorney called as a witness, after the privilege had been waived, testified that no such disclosure had been made to him by plaintiff, and that he had prepared the petition for letters, the inventory and the accounts in complete ignorance of the existence of the deed.

There was other evidence that supports the inference that plaintiff never believed he had title to the Church Street property until shortly before the filing of the present action in December, 1939. In September of 1939 there was tried before the same judge who tried the instant case a case brought by an alleged legatee of Rose Dinneen to establish an allegedly lost will in which she claimed to have been devised the Church Street property. Plaintiff, as administrator, opposed that action and appeared as a witness. In his pleadings and testimony he made no mention of the existence of a deed from his wife to himself, although, if such existed, it would have immediately terminated that proceeding. Just prior to the death of Rose Dinneen plaintiff told the witness Ellingson, son-in-law of the deceased, that he, the plaintiff, had a deed to the property, and when Ellingson

asked him how he had secured the deed the plaintiff replied that prior to the honeymoon trip plaintiff and Rose Dinneen decided to make deeds to each other, that ''you know in taking a trip anything might happen, just in case anything did happen to one or the other of us the property would be taken care of.''

So far as the acts of Rose Dinneen are concerned, it is to be noted that she did not protest when plaintiff took the stock received for the Monterey property in his own name, nor did she protest when the note and deed of trust taken from Skoog were made out in the name of plaintiff alone. She alone signed the application for the renewal of the loan on the Church Street property.

There is no need to refer to any other testimony. The acts and conduct of plaintiff and his wife can be explained only on the theory that each believed the deeds executed on July 14, 1932, in no way affected their ownership of the respective parcels. Certainly, such evidence demonstrates that the participants in the transaction never felt or acted as if the deeds were operative to pass title. The above acts offer the safest and most indicative evidence of their respective intents in giving the deeds. Such evidence clearly supports the finding that there was no intent on the part of Mrs. Dinneen to pass complete and irrevocable title to plaintiff.

The judgment appealed from is affirmed.

Knight, J., and Ward, J., concurred.

A petition for a rehearing was denied March 20, 1943, and appellant's petition for a hearing by the Supreme Court was denied April 19, 1943.