Filed 3/24/25  Marshall v. Hester CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| WALTER G. MARSHALL,<br>　　　Plaintiff and Respondent,<br>v.<br><br>ERNEST HESTER,<br>　　　Defendant and Appellant. | A169400<br><br>(Alameda County<br>Super. Ct. No. RG19017808) |

As trustee of his trust, respondent Walter G. Marshall brought an action to quiet title to property in that trust.  The complaint named six defendants, five of whom were siblings, the children of his wife from a prior marriage.  Following a court trial, the court entered judgment for Marshall.  One of those five siblings, Ernest Hester, appeals, an appeal that does little more than reassert his apparent position below—and does not even attempt to demonstrate error.  We affirm the judgment.

**BACKGROUND**

**The General Setting:  The Parties and the Property**

Leonard Hester Sr. and Parthena Hester were husband and wife and had eight children, five of whom would become parties in the litigation here:

1

Larry, Leonard Jr., Ernest, Mark, and Michael.[1]  In 1972 Parthena and Leonard Sr. purchased a property on Lakeshore Avenue, Oakland (the property), taking ownership as joint tenants.

Leonard Sr. died in 1985 at which point Parthena became the sole owner.  Some years later, apparently in 1993, Parthena conveyed the property to the Parthena Hester Trust.

As indicated, Parthena married Marshall, and she conveyed the property out of her trust to herself and Marshall as joint tenants.  Parthena died in March 2018, at which point Marshall became the sole owner of the property.

On March 15, 2018, Marshall executed a grant deed, which deed was referred to below as the "First Deed."  The First Deed had been prepared by Michael, drafted after a "family meeting" that did not include Marshall.  In fact, Marshall was not told what the meeting was about and did not know, even by the time he testified at trial, who had drafted the First Deed.

Larry testified that Marshall had discussed with him a plan to deed the property to him, so that he could manage it and interact with his Hester siblings.  However, the First Deed named Larry, Mark, and Leonard Jr. as grantees, Mark's name apparently having been added by Larry's wife after the family meeting because Michael objected to having Larry being the sole owner of the property.  When Larry showed Michael the deed, he again objected, and prepared a new deed naming Larry, Mark, and Leonard Jr. as

---

[1]     As is typical in cases involving participants with the same surname, we refer to the Hester siblings by their first names.  We refer to Marshall by his surname.

grantees.[2]  Marshall was not told of these changes.

Marshall testified he signed the First Deed because he believed it would allow Larry to manage the property, and would effectuate Marshall's intent that the property eventually pass to all of the Hester children. Marshall was adamant that he did not intend to give the property outright to Larry or any of the Hester children.  Marshall did not know why the First Deed did not name all eight siblings, and he had left it to Larry to effectuate the plan they had discussed.  Marshall had no discussions with anyone else, including any of the other Hester siblings, about the First Deed.

After having a conversation with Michael and apparently doing some research, Larry determined the mechanism of deed the property as he and Marshall had planned would result in increased property taxes.  So, Larry did not record the First Deed, and retained possession of the original.

Following some discussions with Larry, Marshall created the Walter Gray Marshall Living Trust (the Trust).  And on May 14, 2018, Marshall conveyed, via grant deed, title to the property from himself as surviving joint tenant to himself as Trustee of the Trust.

On November 2, 2018, a document purporting to be the First Deed was recorded in the official records of the County of Alameda.  This instrument does not contain Marshall's notorially-acknowledged signature.  Instead, it contains a certification executed by Lenoard Jr. " 'as Document Custodian' " that the annexed instrument is a " 'true, correct, and complete photocopy of the original document in my possession.' "  That certification was not true, as

2      The deed was, as noted, referred to as the First Deed and became the focus of the litigation that would ensue.  The judgment later entered in the litigation refers to various other deeds and a deed of trust.  The parties' briefing here does not discuss these instruments, and neither will we.

3

the original First Deed was not given to Leonard Jr. but was retained by Larry. The original First Deed was never recorded, and remained in Larry's possession until it was brought to the courthouse in connection with this proceeding.

**The Proceedings Below**

In May 2019, represented by counsel, Marshall as Trustee of his Trust filed a complaint to quiet title and for injunctive and declaratory relief. It named four defendants: Hester siblings Michael, Ernest, and Leonard Jr. and one Ryan Alexander.

A successful demurrer led to an amended complaint and, after a demurrer to that was unsuccessful, on December 19, Ernest, Michael, and Leonard Jr., each representing himself, filed a joint answer.

On December 27, 2019, representing himself, Michael filed a motion for judgment on the pleadings, which motion was denied by order of June 10, 2020.

Apparently following leave of court, on April 8, 2022, Marshall, represented by counsel, filed a Third Amended Complaint. It alleged eight causes of action and named six defendants: Hester siblings Michael, Ernest, Leonard Jr., Larry, and Mark, and Alexander.

In May four answers were filed: (1) by Larry, represented by counsel; (2) by Ernest, Leonard Jr., and Michael, representing themselves; (3) by Mark, representing himself; and (4) by Alexander, represented by counsel.

Along the way, several cross-complaints were filed by various parties.

Against that background, the case proceeded in July 2022 to a court trial where evidence was taken over portions of four days: some three hours on July 18, four hours on July 19, and two hours on July 20. As best we can tell from the court minutes, all parties appeared on all three days, with

4

Marshall, Larry, and Alexander having counsel, and Michael, Ernest, and Leonard Jr. representing themselves.

The primary witness the first two days was Larry, who testified for almost six hours. Ernest and Michael testified briefly on the second day, which ended with some 30 minutes of testimony from Marshall. Marshall testified for some two hours on the third day, following which all parties rested.

The case was continued until July 31 for closing arguments, which arguments for Marshall, Larry, and Alexander were given by counsel. Ernest, Leonard Jr., Michael, and Mark gave arguments on their own.

On August 22, Marshall prepared a proposed statement of decision as directed by the court.

On August 31, representing himself, Leonard Jr. filed objections to the proposed statement of decision. And on October 10, the trial court held a hearing on objections, and entered an order that concludes, "Court takes objections under review and will issue a judgment."

On November 6, the trial court issued its judgment, which provides in its entirety as follows:

"This matter involves the consolidation of two actions: the action captioned Walter G. Marshall, as Trustee of the Walter G. Marshall Living Trust v. Michael B. Hester, et al., RG19017808 ('Marshall') and the case captioned as Ernest Hester v. Larry D. Hester, RG19026151.[3] By agreement of the parties, the consolidated action was to be tried in phases with the equitable claims in the Marshall case to be tried first, in Phase One. These

_____

[3]    Despite that Ernest was the plaintiff in the second case, his brief does not even mention it. And as best we can tell, none of the pleadings in this case is in Ernest's nine-page clerk's transcript.

5

claims included the following:  the first cause of action for quiet title; the second cause of action seeking cancellation of instruments; and the eighth cause of action for a declaration regarding title.

"Following a court trial of Phase One as described, the Court issued a tentative ruling finding for Marshall on all three of these causes of action.  As to the first cause of action (for quiet title) and the eighth cause of action (for declaratory relief), the Court found that the subject property belongs to the Walter Gray Marshall Living Trust.  On the second cause of action (for cancellation or instruments), the Court found for the Plaintiff, a finding that cancels (1) the recorded copy of the first deed (Instrument No. 2018212489), (2) the deeds purporting to transfer partial interest to Michael Hester (Instruments Nos. 2018217705 and 2019016225 ), and (3) the deed of trust in favor of Ryan Alexander (Instrument No. 2019016226).[4]

"The Court then directed counsel for Marshall to prepare a proposed statement of decision, which counsel filed on August 22, 2023.  Thereafter, Defendant Leonard Hester filed objections to the Statement of Decision, which objections were heard by the Court on October 10, 2023.  Leonard Hester limited his lengthy objections to just one at the hearing when he requested that the Court address the ownership rights of the beneficiaries of the Walter Gray Marshall Living Trust which the Court declines to do.

"**NOW, THREOFROE** [*sic*], **IT IS ORDERED, ADJUDGED AND DECREED that:**

"Judgment is issued and hereby entered in favor of Plaintiff Marshall on the first, second, and eighth causes of action in Marshall action.

---

[4]     As noted see footnote 2.  Neither parties' briefing refers to some of the referenced instruments, particularly the deeds "purporting to transfer partial interest to Michael" or the deed of trust in favor of Alexander.

6

"**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED**

"That pursuant to Code of Civil Procedure section 1032, et. seq., that Plaintiff Walter G. Marshall, as Trustee of the Walter Gray Marshall Living Trust, as the prevailing party, shall recover from Defendants their costs of suit herein in the amount determined by a Memorandum of Costs and, if applicable, related proceedings."

On December 20, representing himself, Ernest filed a notice of appeal from the judgment. No other defendant appealed.

## DISCUSSION

### Introduction, and Some Observations about Ernest's Briefing

Ernest has filed a 17-page opening brief, the first four pages of which are the table of contents. Nine separate sections follow, which include a two-page "Statement of Facts" (section IV), two pages of issues on appeal (section VI), and the argument (section VIII). The argument section is less than five pages and lists four separate arguments, two with sub-parts, and we quote them in full:

"1.     The Trial Court Erred In Failing to Find that Walter Delivered the First Deed . . . .

"A.     Walter Was Estopped from Rescinding The First Deed, Resulting In A Reversible Error By the Trial Court . . . .

"2.     The Trial Court Erred By Failing to Fulfill Walter's Intent for Equal Distribution of The Property Among All Eight Children . . . .

"3.     The Trial Court's Failure to Issue A Statement of Decision After Leonard's Timely Objection Constitutes A Reversible Error . . . .

"4.     The Walter Gray Living Trust Was Invalid Due to Walter's Lack Of Intent to Create the Trust . . . .

"A.     Assuming The Trust Was Valid, the Modification Removing

7

Modification Removing Ernest, Leonard and Michael As Beneficiaries Was Void Due to Larry's Undue Influence . . . ."

We begin our discussion by noting that Ernest's brief violates many principles of appellate review, a criticism we make against the background that Ernest has chosen to represent himself, as is his right. Doing so, however, he is held to the same standard as an attorney. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984–985.) Self-representation is not a ground for lenient treatment and a person who represents himself "must follow correct rules of procedure." (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247.) The brief here falls short.

As noted, the "Statement of Facts" is all of two pages, which facts, we note, are set forth in conclusory fashion—and essentially as Ernest's version of those facts. This is inappropriate.

California Rules of Court, rule 8.204(a)(2)(C) provides that an appellant's opening brief shall "[p]rovide a summary of the significant facts . . . ." And the leading California appellate practice guide instructs about this: "Before addressing the legal issues, your brief should accurately and fairly state the critical facts (including the evidence), free of bias; and likewise as to the applicable law. [Citation.] [¶] Misstatements, misrepresentations, and/or material omissions of the relevant facts or law can instantly 'undo' an otherwise effective brief, waiving issues and arguments; it will certainly cast doubt on your credibility, may draw sanctions [citation], and may well cause you to lose the case." (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2024) ¶ 9:27, italics omitted.)

Ernest's briefing does little more than rehash—and in conclusory terms—his apparent position below, which disregards the admonition from

8

Division One of this court that he is not to merely reargue or "merely reassert [his] position" below. (*Conderback, Inc. v. Standard Oil Co.* (1966) 239 Cal.App.2d 664, 687.)

Finally, and perhaps most significantly, Ernest's brief ignores the most fundamental rule of appellate review, that the rulings of the trial court are presumed correct, and that he, as appellant, must demonstrate the court committed reversible error. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608−609; *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) This, he has not done.

We turn to discussion of Ernest's appeal—and easily conclude it has no merit.[5]

**The Appeal Has No Merit: The Judgment Is Supported by Substantial Evidence**

As we read Ernest's brief, three of his four arguments—numbers one, two, and four—deal with the issue of Marshall's intent and the delivery of the First Deed. And as to that, the law is well settled, illustrated by *Dinneen v. Younger* (1943) 57 Cal.App.2d 200, 204–205, an opinion by Division One of this court that held as follows: "The concept of delivery involves more than merely physically handing possession of the deed to the grantee or someone on his behalf. . . . The act of delivery must be accompanied with the intent that the deed shall become presently operative as such, that is, must be accompanied with the intent to presently pass title, even though the right to possession and enjoyment may not accrue until some future time. . . . The rule applies not only where possession of the deed is given to a third person,

---

[5] We note that Marshall has a lengthy argument that the appeal should be dismissed because Ernest is not an "aggrieved" party and thus has no standing. Ernest's reply brief takes issue with this. We choose not to weigh in on the issue.

9

but also where such possession is given to the grantee directly. . . . Intention to part with title is indispensable—that is the factor that gives vitality to the delivery. . . ." (Cited cases and authorities omitted.)

As the court put it in *Luna v. Brownell* (2010) 185 Cal.App.4th 668, 673: " 'A deed does not transfer title to the grantee until it has been legally delivered.' (3 Miller & Starr, Cal. Real Estate (3d ed. 2000) Deeds, § 8:36, p. 66, fn. omitted; see also Civ. Code, § 1054.) 'Delivery is a question of intent.' (*Osborn v. Osborn* (1954) 42 Cal.2d 358, 363.) 'A valid delivery of a deed depends upon whether the grantor intended that it should be presently operative, and a manual transfer is not conclusive evidence of such intention.' (*Huth v. Katz* (1947) 30 Cal.2d 605, 608.) . . . The trier of fact must determine intent by reviewing all of the surrounding circumstances of the transaction. (*Perry v. Wallner* (1962) 206 Cal.App.2d 218, 221 . . . .) 'Where there is substantial evidence, or where an inference or presumption may be drawn from the evidence to sustain the court's finding of delivery or nondelivery, the finding will not be disturbed on appeal.' (*Ibid*.)"

Ernest ignores this law, and as to what he says about "intent," it is in the most conclusory of ways, and skewed to his version of claimed facts—not to mention contrary to the actual evidence from Marshall and Larry.

Marshall consistently expressed his intent was that the property eventually pass to the Hester children, and that he signed and gave the First Deed to Larry with only that intent. Larry confirmed that. Larry also confirmed that Walter never expressed any intent to give the property outright to Michael, to Leonard, to Mark, or to Larry himself. The trial court heard that evidence and held as it is did. That holding is supported by the evidence.

Likewise by the doctrine of implied findings. Here, as noted, the trial

court ultimately did not issue a statement of decision. In light of that, the doctrine of implied findings comes into play, which requires that an appellate court presume that the trial court made all factual findings necessary to support the judgment. (*Michael U. v. Jamie B.* (1985) 39 Cal.3d 787, 792, superseded by statute on other grounds as stated in *In re Zacharia D.* (1993) 6 Cal.4th 435, 448; *In re Marriage of Arceneaux, supra,* 51 Cal.3d at pp. 1133–1134.)

We close with three brief observations.

First, in sections VIII.1.A and VIII.2 of his opening brief, Ernest seems to agree with the trial court finding that Marshall did not intend to deed the property to any subset of the Hester siblings, but instead intended that the property eventually pass to all of the Hester children. If so, this concedes the judgment was correct, because the First Deed as drafted did not effectuate that intent.

Second, it appears that Ernest attempts to argue: (1) that Marshall should be estopped from challenging the validity of the First Deed or; (2) that the First Deed should be reformed to include the names of all the Hester siblings; and (3) that the trial court should have invalidated the Trust on the basis of Marshall's lack of intent to create the trust and (4) undue influence. None of these four arguments was asserted below. They have no place here. The general rule is " ' " 'theories not raised in the trial court cannot be asserted for the first time on appeal; appealing parties must adhere to the theory (or theories) on which their cases were tried. This rule is based on fairness—it would be unfair, both to the trial court and the opposing litigants, to permit a change of theory on appeal.' " ' " (*Hewlett-Packard Co. v. Oracle Corp.* (2021) 65 Cal.App.5th 506, 548.)

Third, Ernest argues that the trial court committed reversible error in

not issuing a statement of decision. But Ernest did not request a statement of decision and did not object to the proposed statement of decision submitted by Marshall's counsel. Leonard did. Responding to Leonard's objections, the court scheduled a hearing on them, at which Leonard withdrew all of his objections save one, and the court overruled that remaining objection in its judgment. Ernest has no standing to appeal the court's ruling on Leonard's objection.

## DISPOSITION

The judgment is affirmed. Marshall shall recover his costs on appeal.

_____
                    RICHMAN, J.

We concur.

_____
STEWART,  P.J.

_____
MILLER, J.

(A169400)