[Civ. No. 6084. First Appellate District, Division Two.—May 23, 1928.]

RICHARD L. WATT, Appellant, v. OCTAVIA COPELAND, Respondent.

Roy A. Bronson, E. D. Bronson, Jr., and W. F. Cowan for Appellant.

Barrett & McConnell for Respondent.

PRESTON, P. J., *pro tem.*—Plaintiff brought this action to quiet title to an undivided one-half interest in a tract of land situate near the town of Sonoma, in Sonoma County, and also to cancel a deed made in 1923 by Sarah Ellen Watt, as grantor, to defendant Octavia Copeland, as grantee.

The case was tried by the court sitting without a jury, and judgment was rendered quieting the title of defendant Octavia Copeland in and to said undivided one-half interest in said land, and canceling a deed made in 1911 by Sarah Ellen Watt, as grantor, to plaintiff, Richard L. Watt, as grantee. From this judgment the plaintiff prosecutes this appeal.

The facts are briefly these: Richard L. Watt, Sr., was the husband of Sarah Ellen Watt and the uncle of plaintiff and appellant and the owner of the entire tract of land in question. The property was community property. Richard L. Watt, Sr., died testate in 1889, and his estate was probated and this land distributed as follows: An undivided one-half interest to appellant Richard L. Watt, Jr., subject to a life estate therein to Sarah Ellen Watt and the remaining undivided one-half interest to Sarah Ellen Watt in fee simple. Following the death of Richard L. Watt, Sr., Mathew Watt, the father of appellant, was the tenant in possession of the land for twelve years. In 1901 the appellant went into possession of the premises under a verbal lease from Mrs. Watt at an agreed rental of $450 per annum. This lease was renewed from year to year, the only change being that about the year 1911 the rent was raised to $550 per annum. Appellant remained in possession of the ranch as tenant from 1901 until the death of Mrs. Watt in September of 1924. Mrs. Watt, after her husband's death and continuously until her death, resided with her cousin Octavia Copeland, the respondent herein. In 1911 Mrs. Watt signed and acknowledged a deed purporting to convey to appellant Richard L. Watt her undivided one-half interest in and to said property, and caused said deed to be deposited in the Sonoma Valley Bank, at Sonoma, California. This deed was prepared by Robert A. Poppe, an attorney at Sonoma, acknowledged before him as notary public, placed in an envelope and sealed, and upon the

envelope Mr. Poppe wrote: "From Sarah Ellen Watt to Richard L. Watt. To be delivered upon my death." Immediately below this writing appeared the signature of Mrs. Sarah Ellen Watt. Mr. Poppe then took this envelope containing the deed and instructions to the Sonoma Valley Bank, in Sonoma City, and delivered it to Mr. Burris, the cashier of the bank. What took place between Mr. Burris and Mr. Poppe can best be related by quoting a portion of the testimony of Mr. Burris: "Q. Do you recall the occasion, Mr. Burris, sometime about the year 1911, when Robert Poppe, now deceased, but then a practicing attorney of Sonoma, came to your bank and delivered to you a paper in connection with some business for Mrs. Watt? A. I do. Q. . . . Was anyone else present within hearing, as far as you know? A. Not that I know of. Q. Did Col. Poppe say to you at that time what the paper was that he was giving to you? A. He did not designate the paper as a deed, or bond, or anything of that kind. Q. Did Mrs. Watt come to the bank with Col. Poppe at that time? A. I think not. Q. Did you ever see or talk with Mrs. Watt in connection with that transaction? A. I never did. Q. You say that at this time Col. Poppe handed you this paper? A. That is my recollection. Q. And what was the paper? A. Well, it was simply an envelope. Q. Do you know whether or not there was any writing on it? A. There was writing on the back of the envelope. Q. To the best of your recollection, what was that writing? A. Well, it was simply, 'To be delivered to Mr. Watt' at her death. The Court: You say, Mr. Burris, that the name, Richard Watt, and also Sarah Watt; how would her name come there, how did that appear, do you recall? A. I do not recollect only that he handed it to me and told me that that was a document that Mrs. Watt wanted placed in safekeeping. Q. What, if anything, did Mr. Poppe say to you in regard to that document when he handed it to you? A. Well, he handed me the document and told me; 'That is a document from Mrs. Watt,' and that he wished us to keep it there for safekeeping until she called for it. . . . Q. You did take the document? A. Yes, sir. Q. And it was thereafter kept in the custody of the bank? A. Yes, sir. Q. Did you issue any receipt for the document to Col. Poppe for Mrs. Watt. A. No receipt. Q. Where was the deed or that

envelope kept? A. It was kept in the vault, in a pigeon-hole where we kept other deeds, and wills and other various papers that were left with us for safekeeping.''

There is some little conflict as to the handwriting and also as to the exact wording on the envelope containing the deed. The witness Perkins, an employee of the bank, testified in part as follows: ''Q. Where was that envelope when you first saw it? A. That envelope was in a pigeonhole in a wooden case in the bank box with other papers. Q. Now, what was the character of the other papers with which it was kept? A. Oh, deeds, and mortgages and satisfaction of mortgages. Q. Papers belonging to the bank, or belonging to the bank's customers? A. Belonging to the bank's customers. . . . Q. Just give us your best recollection of what the endorsement was, Mr. Perkins? A. Across the top of the envelope was marked 'Deed,' and just below, 'From Sarah E. Watt, to Richard L. Watt, to be delivered to him upon my death,' signed, 'Sarah E. Watt.' . . . I might state that the writing on the envelope was in the handwriting of the late Robert A. Poppe, except the signature of Mrs. Watt. Q. You were familiar, were you, with Col. Poppe's handwriting? A. Very familiar. Q. No question about that being his handwriting? A. No question at all.''

Henry Webster, Jr., another employee of the bank, testified that the wording on the envelope containing the deed was as follows: ''This deed to be delivered to Richard L. Watt by the Sonoma Valley Bank on my death. Signed, Mrs. S. E. Watt.'' Mr. Webster further testified that all the writing was in the handwriting of Mrs. Watt.

This deed was held by the bank from the time of its deposit in 1911 until the first week in September, 1923, at which time it was delivered by the bank to Miss Copeland upon the written order of Mrs. Watt. Miss Copeland took the envelope containing the deed and delivered the same to Mrs. Watt. The envelope, unopened, was deposited in a drawer in Mrs. Watt's home, where it remained for about two months. On or about November 1, 1923, Mrs. Watt sent for Mr. Grinstead, an attorney residing and practicing in Sonoma City, and who had taken over the practice of Mr. Poppe, who had died. Thereafter, and on the same day, Mr. Grinstead came to Mrs. Watt's home and the

envelope containing the deed was then opened by him and after some conversation with Mrs. Watt, Mr. Grinstead drew a will for her, which she at that time duly executed, and in which she devised and bequeathed her entire estate to Miss Octavia Copeland, the respondent herein, and in said will recited that she was the owner of an undivided one-half interest in the lands in question. Mr. Grinstead took the deed and the envelope with the instructions indorsed thereon to his office. Thereafter, and on November 6th, at the request of Mrs. Watt, Mr. Grinstead drew a new deed conveying the undivided one-half interest in the land in question from Sarah Ellen Watt, as grantor, to Miss Octavia Copeland, as grantee, which deed was duly executed and delivered. This latter deed was held by Mr. Grinstead and recorded upon the death of Mrs. Watt. The envelope containing the instructions as to the deed of 1911 was torn up by Mr. Grinstead, and the deed itself was returned by him to Mrs. Watt through the mail and she thereupon destroyed it.

Evidence of statements, acts, and conduct on the part of Mrs. Watt was received in evidence as bearing upon the question of her intention at the time the deed to appellant was deposited with the bank in 1911. The respondent testified that in November, 1923, Mrs. Watt stated to her, "that she did not know what was on the envelope; that she had never read it, and that said property was hers and she had the right to do with it as she pleased."

On another occasion Mrs. Watt stated to the respondent "that she could mortgage her half of the property, or sell it, if it was necessary."

The witness Sophia Kramer, an intimate friend and neighbor for many years of Mrs. Watt, testified that in the year 1917 or 1918, she had a conversation with Mrs Watt, in which Mrs. Watt urged her to deposit her bonds and other papers for safekeeping in the bank, saying, "I have my papers there for safekeeping, and you can get them for the asking; I can get them any time I want to and you can do the same." On another occasion the witness testified that Mrs. Watt stated to her that she had a right to sell her half of the ranch if she so desired.

Another witness, Mrs. Burns, a nurse who cared for Mrs. Watt from time to time during the last years of her life,

testified that Mrs. Watt told her "that her husband had left a will leaving Richard Watt half of her property and had requested her to leave her other half to him also, and she intended doing so, although Mr. Poppe, the lawyer, told her she did not have to, as the will was not a just one. He said that she had the right to her own property and to half of his to do with as she pleased, but she thought she would carry out his wishes for some years afterwards, and did finally make a deed in favor of Richard Watt, and put it in the bank for safekeeping, because there might be a fire or anything, and would destroy it if she kept it at home. She said she always kept any papers she had in the bank, but in later years, Miss Copeland and she had lived together for thirty-six or thirty-seven years, I think she said, and she had done so much for her, and had given up her business, so she could take care of her, and she said she would not be able to make a living by sewing, so if I have anything to leave, she has the right to half of it, and I am making a new deed in her favor."

There were other witnesses who testified to similar conversations.

Appellant testified that Mrs. Watt had on several occasions told him that 'she was going to give him her half of the property upon her death, and that she had made a deed to him and had deposited it in the Sonoma Valley Bank.

From all these facts and circumstances the trial court found, among other things, "that at the time said deed was so deposited with said Sonoma Valley Bank, and at all times thereafter until her death, it was the purpose and intention of said Sarah Ellen Watt that she should have dominion and control over said deed and the right to withdraw and revoke the same, and that said Sarah Ellen Watt at the time said alleged deed was so deposited with the said Sonoma Valley Bank, and at all times thereafter until her death, did not intend to make absolute delivery of said deed or to make any delivery whatever of said deed other than to deposit the same for safekeeping as aforesaid."

Appellant contends that this finding is not supported by the evidence. The law is well settled that the findings of the trial court upon conflicting evidence are conclusive and all reasonable inferences are to be indulged in support

of the findings. (*Treadwell* v. *Nickel*, 194 Cal. 243 [228 Pac. 25]; *Wilbur* v. *Wilbur*, 197 Cal. 1 [239 Pac. 332].) The law is equally well settled that the burden is upon appellant, who claims error, to show its existence. (Hayne on New Trial and Appeal, Rev. Ed., sec. 285, p. 1574; *Wilbur* v. *Wilbur, supra.*) Where two inferences may reasonably be deduced from a certain set of facts or circumstances, a reviewing court is not permitted to substitute its deductions for those of the trial court. (*Wilbur* v. *Wilbur, supra*, and cases there cited.)

The evidence in this case is not particularly conflicting, but it presents a state of facts from which the inference may be reasonably drawn that there had been no delivery of the deed with intent on the part of Mrs. Watt to surrender all control and dominion over the same, and to immediately vest in the grantee, Richard L. Watt, the title to the property; or, the inference could also be drawn from the same facts and circumstances that Mrs. Watt, when she caused the deed to be deposited in the bank, intended to surrender all dominion and control over the deed, and that the title to the property should vest absolutely and immediately in the grantee, Richard L. Watt. Under such circumstances, we are not permitted to disturb the findings of the trial court.

■ The legal requirements to effect a valid delivery of a deed has often been stated by the supreme court of this state. In *Williams* v. *Kidd,* 170 Cal. 638 [Ann. Cas. 1916E, 703, 151 Pac. 3], the supreme court states the rule as follows: "It is essential to the validity of the transfer of real property that there be a delivery of the conveyance with intent to transfer the title, and the true test under which delivery is to be determined is in ascertaining whether in parting with the possession of the conveyance the grantor intended thereby to divest himself of title. If he did, there was an effective delivery of the deed. If not, there was no delivery. The solution of this question is grounded entirely on the intention of the grantor, and this essential matter of intention is a question of fact to be determined by the trial court from a consideration of all the evidence in a given case bearing upon the question." (*Bury* v. *Young,* 98 Cal. 451 [35 Am. St. Rep. 186, 33 Pac. 338]; *Kenniff* v. *Caulfield,* 140 Cal. 34 [73 Pac. 803]; *Estate of Cornelius,* 151 Cal. 552 [91 Pac. 329]; *Follmer* v. *Rohrer,* 158 Cal.

757 [112 Pac. 544]; *Reed* v. *Smith*, 125 Cal. 491 [58 Pac. 139]; *Black* v. *Sharkey*, 104 Cal. 279 [37 Pac. 939]; *Hibberd* v. *Smith*, 67 Cal. 547 [56 Am. Rep. 726, 4 Pac. 473, 8 Pac. 46]; *Denis* v. *Velati*, 96 Cal. 227 [31 Pac. 1]; *Hotaling* v. *Hotaling*, 193 Cal. 382 [224 Pac. 455]; *Blackledge* v. *McIntosh*, 85 Cal. App. 475 [259 Pac. 770].)

■ Appellant contends that the trial court erred in admitting in evidence acts and declarations of Sarah Ellen Watt, made after the deposit of the deed in the bank, because her instructions to the bank were in writing and were complete upon their face, and could not be varied or changed by parol evidence. We think this contention is without merit. The very question in issue in this case was whether or not Mrs. Watt, the grantor, had parted with her title by making an effective delivery of the deed in escrow. Therefore, her acts and statements, material to the question of delivery during the entire period that the deed was in escrow, may be shown. (*Williams* v. *Kidd, supra,* and cases cited; *Smith* v. *Smith*, 173 Cal. 725 [161 Pac. 495].) Furthermore, the written instructions to the bank did not purport to be all the instructions given by Mrs. Watt. Mr. Burris, the only living person present when the deed was deposited with the bank, testified that Mr. Poppe handed him the document, saying: "She (Mrs. Watt) wants you to hold this document for safekeeping until she calls for it if she sees fit." From this language alone, if it be given any consideration, it might well be concluded that the delivery *was conditional, being merely deposited with the bank for safekeeping.*

The rule that a written instrument may not be varied by oral testimony has no application in a case of this character. The vital question is, what was the intention of Mrs. Watt when she signed and acknowledged the deed, and caused it to be placed in the possession of the bank? and the law says that this can best be ascertained by showing all the facts and circumstances occurring at the time of the making of the deed, and also all the subsequent acts and declarations of the grantor in relation to the property. (*Smith* v. *Smith, supra; Gaston* v. *City of Portland,* 16 Or. 255 [19 Pac. 127].)

The case of *Moore* v. *Trott*, 156 Cal. 353 [134 Am. St. Rep. 131, 104 Pac. 578], relied upon by appellant, is not

in conflict with the rule that oral instructions may be proved in connection with written instructions if, as a matter of fact, such oral instructions were actually given. In *Moore* v. *Trott, supra,* the *only instructions,* as far as the record discloses, were in writing, and there the court properly held that the question of delivery depended upon a true construction of the writing. There was no other evidence in the case from which the real intention of the grantor could be determined. Furthermore, on the second trial of *Moore* v. *Trott, supra,* the subsequent acts and declarations of the grantor made to persons other than the depositor were admitted in evidence, notwithstanding the written letter of instructions, and the supreme court sustained the judgment of the lower court. (*Moore* v. *Trott,* 162 Cal. 268 [122 Pac. 462].)

Appellant further contends that the court erred in admitting in evidence the oral instructions given by Mr. Poppe to Mr. Burris, the cashier of the bank, at the time the deed was deposited with the bank, for the additional reason that Mr. Poppe was not shown to have any authority to speak for Mrs. Watt. There is no merit in this contention. The record shows clearly that Mr. Poppe was the agent and attorney of Mrs. Watt in the preparation and delivery of the deed, and had implied, if not actual, authority to add oral instructions on her part to the written instructions given to the bank. Moreover, the instructions that Mr. Poppe gave to Mr. Burris are in accord with the subsequent acts and declarations of Mrs. Watt.

The appellant also contends that the court erred in other respects in the admission of certain evidence. We have examined all these alleged errors and we find none of them of sufficient importance to demand particular mention.

In a case of this character, it is difficult, if not impossible, for the trial judge to prevent some incompetent testimony from finding its way into the record, but it is to be assumed that the court in reaching its conclusion disregarded any such incompetent evidence. (*Roth* v. *Thomson,* 40 Cal. App. 208 [180 Pac. 656].)

We have examined the entire record with care and find no prejudicial error therein. The case was carefully tried and the conclusion reached by the trial court that there had

been no delivery of the deed in question, with the intent to transfer the title, is a fair and reasonable inference to be deduced from all the facts.

We think the judgment should be affirmed, and it is so ordered.

Sturtevant, J., and Nourse, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 19, 1928.

All the Justices present concurred.