[Civ. No. 13917.  First Dist., Div. Two.  May 3, 1949.]

EVE L. HILL, as Administratrix, etc., Appellant, v.
DOROTHY HILL et al., Respondent.

Leo R. Friedman for Appellant.

O'Gara & O'Gara, Thomas Casey, Jr., and James A. O'Gara for Respondent.

GOODELL, J.—John S. Hill died on July 6, 1942. Title to the property in litigation then stood of record in his name under a deed from his daughter, respondent herein, dated July 3, 1926, and recorded June 19, 1935. The property is on the corner of Twentieth and Lexington Streets in San Francisco and is improved with a two-story dwelling. Appellant sued to quiet title thereto, joining as defendants the respondent and Inez Hill, her mother. The latter filed an answer disclaiming any interest in the property. Respondent filed a cross-complaint asserting title in herself. The court awarded judgment in her favor. Appellant's motion for a new trial was denied and she took this appeal from the judgment.

In order to find the title vested in respondent the court had to first determine that the deed from respondent to decedent was never delivered. Appellant contends that the evidence is insufficient to sustain such determination.

John S. Hill had been married to Inez Hill, and respondent was their only child. Some years prior to 1922, they were divorced. He later married Catherine Hill and they had three daughters, Eve (appellant), Marjorie and Lila. On July 28, 1923, a final judgment of divorce dissolved the marriage of John and Catherine, the interlocutory judgment having been entered on January 17, 1922.

Respondent acquired the property from John H. and Ellen Blakeway, by a deed dated July 1, 1922. Respondent testified that it was purchased with money furnished by her father. Elsewhere she testified that he contributed *most* of the purchase price. She also testified that she had told her father on one occasion that "that was the only thing that he had ever given me in any way at all."

On April 24, 1925, before the Blakeway deed was recorded, Catherine Hill sued John S. Hill, Dorothy Hill and John H. and Ellen Blakeway, to establish a community interest in the property in question and for its partition. She alleged that in

the divorce action her husband had fraudulently concealed from her and from the court cash and other assets accumulated by their joint efforts while married and which had not been disposed of in the divorce case. She alleged that the property now in litigation had been acquired by her husband from the Blakeways with community funds, but that the deed thereto had been taken in the name of this respondent and had not been recorded, thereby leaving the record title in the names of the Blakeways.

The court in that case held in favor of John S. and Dorothy Hill, and against the plaintiff, and found that on July 1, 1922, Dorothy Hill had purchased the property from the Blakeways for approximately $6,000 ''and at said time paid part of the said purchase price and thereafter the balance of said purchase price all out of her own sole and separate funds and estate and in which neither the defendant John S. Hill nor the plaintiff [Catherine] ever had or has any interest of any kind or description whatsoever.'' The conclusion of law was that the property ''was and is the sole and separate property of the defendant, Dorothy Hill.'' The judgment, to the same effect, was entered on June 8, 1926, and no appeal was taken. The judgment-roll in that case was introduced in evidence in this, without objection.

Within a month after the entry of that judgment, i. e., on July 3, 1926 (the deed from the Blakeways to respondent being still unrecorded), respondent signed and acknowledged the deed now in question from herself to decedent. It is typewritten on a Cowdery's form of deed of gift, recites love and affection as the consideration, and describes the property in litigation. A certificate of acknowledgment is attached, dated July 3, 1926, signed by Harriet K. Hobart, Notary Public, with her seal affixed. At the time of its execution the words printed at the bottom of the deed ''Signed and Delivered in the Presence of'' were followed by the signature ''Harriet K. Hobart'' and the word ''Delivered'' was underscored in ink. At a later time this was changed to read as follows:

''The actual delivery of this deed was made ~~Signed and Delivered~~ in the Presence of and witnessed by:

Harriet K. Hobart.''

In the making of this alteration the printed words ''in the Presence of'' and Mrs. Hobart's signature were untouched. The remaining words are in ink, in the handwriting of Mrs. Hobart.

Respondent called Dr. E. O. Heinrich, an expert on handwriting, who testified that these alterations had been made by Mrs. Hobart some time after October, 1934. He had made an examination of the day-to-day entries in her notarial record and by a comparison of her handwriting and the inks used in these entries he was able to fix that time.

The testimony of Mrs. Hobart was not available at the trial because of her advanced age.

Respondent testified that her father asked her to make this deed and that his purpose in having it executed was to keep her mother from inheriting any share in the property in case respondent died before he did; that it was left in escrow with Mrs. Hobart with instructions to deliver it to him only in case of respondent's death, and to return it to respondent if he died first. She testified that it was not her intention at the time she signed the deed to deliver title to her father at that time, but that her intention when she signed it and deposited it with Mrs. Hobart, was that title would be retained by respondent if her father died first.

The entry which the notary wrote in ink in her book, apparently at the time of the acknowledgment and in the regular course of official business, reads: "1926 . . . July 3 Dorothy A. Hill to John S. Hill Deed Gift . . . del. S. E. Cor. Lexington & 20th Sts. 24′ 6″ X 85′."

Mrs. Hobart's daughter testified that she was familiar with her mother's practice and that the abbreviation "del." stood for "delivered."

Respondent testified that for some time before the recordation of the deed her father had strongly importuned her to consent to its release from escrow but that she had refused to do so. Respondent testified over objection that Mrs. Hobart had told her that decedent was putting pressure on her to let him have the deed and that she repeatedly urged respondent to consent to its release so as to remove this pressure, and that finally Mrs. Hobart had told her that she could no longer withstand decedent's importunities and had yielded and turned the deed over to him. The date of this latter conversation was fixed by respondent at February 1, 1935, by association with another event (discussed later).

The deed was recorded by decedent on June 19, 1935, almost nine years after it was signed.

After making the deed respondent exercised acts of dominion over the property, inconsistent with a divestiture of her

title. Decedent also exercised acts of dominion, most of which were proved by respondent's own testimony.

Among such acts was a mortgage on the property made by respondent to Bank of Italy National Trust & Savings Association on August 16, 1927, to secure $3,500 or $4,000 which she borrowed to invest in stocks. Decedent got none of this money. When asked if he knew about the mortgage respondent answered "Yes, he did. He was up to his neck in his own stock business." She was still paying off this loan at the time of trial.

Decedent had been occupying the house before the deed was made, and thereafter continued to do so. From time to time he rented rooms therein and kept the rents. In September, 1940, he made a one-year lease of the basement. Respondent at no time occupied the house. She never sought to recover the rentals from decedent, or to assert her own title or right of possession. She testified that decedent paid the taxes and insurance whenever he had the money but when he was not in funds she did so, and that after 1935 she paid the insurance.

Several documents relating to insurance were introduced by appellant. One is an abstract of a $6,000 fire policy insuring the improvements from July 1, 1931 to July 1, 1934, in the name of Dorothy A. Hill, with loss payable to Bank of America National Trust & Savings Association. Attached thereto are two fragments of the letter transmitting it from Mrs. Hobart to John S. Hill, the bottom of which letter is torn off. Attached also are two receipts for premium money paid by decedent, signed by Mrs. Hobart, one in 1931, the other in 1934.

In January, 1933, decedent, in moving for a modification of the decree in the divorce case between himself and Catherine Hill, filed an affidavit, (notorized by Mrs. Hobart) deposing that he was "without money, means, property or income of any kind with which to support himself or his minor children" or his former wife.

In March, 1935, Catherine Hill brought decedent before the municipal court in a nonsupport proceeding. Counsel who then represented him testified herein that when he interviewed decedent "he explained to me that his second wife was attempting to collect alimony from him, or support money, through the criminal courts, and was insisting that he owned a piece of real property that he was getting rents from. I asked him whether that was correct or not and he said, as nearly as I can recall, that he didn't own the property and was

getting nothing from it. In the course of interviewing him, I asked him whether there was anyone who could prove it, he told me that his daughter, Dorothy Hill, could . . . and I contacted her.'' The attorney testified that at the hearing decedent ''testified to his lack of funds and lack of property, and his daughter, Dorothy Hill, who had been called by me as a witness, also testified.'' The court dismissed the matter.

On February 2, 1935, respondent executed and recorded a deed of the property to her mother, Inez Hill. Respondent testified that Mrs. Hobart had telephoned her on the previous day that she had turned over the deed of July 3, 1926, to decedent, and that on learning this she immediately made the deed to her mother. It is appellant's theory that it was the recordation of this deed that motivated decedent to record the deed of July 3, 1926. Mrs. Hill later reconveyed and has filed a disclaimer herein, hence the deed of February 2, 1935, plays but a minor part in this litigation.

Both sides agree that the real question in the case is whether the deed of July 3, 1926, was delivered.

''The elements of delivery are, that the writing must be meant by the maker to take immediate effect . . .'' (9 Cal. Jur. 151.) Appellant's position on this point is ''that the deed was accompanied by an absolute delivery; that no condition was attached thereto; that *John S. Hill had possession of this deed from the time it bears date.''* (Emphasis added.)

The deed was acknowledged and recorded, and was in the grantee's possession when he died. Appellant relies on the well-settled presumptions flowing from these facts. (*Thomas* v *Peterson,* 213 Cal. 672, 674 [3 P.2d 306]; *Butler* v. *Woodburn,* 19 Cal.2d 420, 425 [122 P.2d 17].) Appellant rested after introducing the recorded deed, and there is no doubt that she had then made out a prima facie case.

In *Ward* v. *Dougherty,* 75 Cal. 240, 242 [17 P. 193, 7 Am. St.Rep. 151] (followed in *Stewart* v. *Silva,* 192 Cal. 405, 409 [221 P. 191]) the court says ''The question of delivery being one of fact, and possession being only primary evidence of delivery, he who disputes such fact may rebut the presumption arising from possession by showing that there has in fact been no delivery; but it has been said that where a deed is found in possession of the grantee, nothing but the most satisfactory evidence of non-delivery should prevail against the presumption . . .'' In *Severn* v. *Ruhde,* 58 Cal.App.2d 704, 707 [137 P.2d 466] the court says: ''The evidence should be 'clear and convincing.' ''

Based on that rule appellant contends that ". . . it appears that the trial Court rendered judgment on the sole and uncorroborated statement of the defendant that she never intended to part with title to the property. This statement is contrary to every presumption of law and every other fact in the case . . . The uncorroborated word of the defendant in this action does not meet the required legal test."

Is this contention borne out by the record?

With respect to the alteration of the deed, it is an uncontradicted fact that the notary altered it after October, 1934. Appellant's theory is that "The change in the witness clause of 1934 or 1935 does not contradict or cast suspicion upon any of the foregoing facts [theretofore discussed] ; if anything, it strengthens such facts. In 1935, Mr. Hill discovered that the defendant had made a deed to her mother of the property. It was at such time that Mr. Hill had his deed recorded and, for the purpose of leaving no question open, Mrs. Hobart made the witness clause more emphatic." This means that decedent had it in 1934-5 and when he decided to record it he took it back to the notary and had her change it to state that she witnessed "The actual delivery" instead of delivery. We agree that was one inference which might have been drawn.

It has to be admitted, however, that the alteration by the notary eight years after the acknowledgment is susceptible of an opposing inference, namely, that the document had been lying in escrow continuously for those eight years. The delay of almost nine years in recording the deed lends support to such contrary inference. But standing alone, and independently of the alteration, the delay in recordation supplies the basis for an inference that the deed had not been unconditionally delivered. Such delay is a suspicious circumstance (see *Joy* v. *Helbing,* 7 Cal.App. 519, 523 [94 P. 863]). Both the alteration and the delay in recordation are consistent with respondent's testimony that the intent was that the deed was to remain in escrow, to be delivered to the grantee only if respondent died first, and returned to her if he died first.

With respect to the acts of dominion exercised by both grantor and grantee, and the legal effect thereof, section 1963, subdivision 12, Code of Civil Procedure provides that there is a presumption "That a person is the owner of property from exercising acts of ownership over it, or from common reputation of his ownership." Appellant strongly relies thereon but, like any other good rule, it works both ways. Here it operates in respondent's favor as well as in appel-

lant's. Decedent paid taxes and insurance *and so did respondent.* Respondent testified that decedent paid them by way of recompense for his use and occupancy of the house. It is true decedent occupied the house and retained the rents, but he had occupied it before the deed was made, and simply remained there. He was, after all, respondent's father, and in straitened circumstances a large part of the time and "she felt he needed shelter and he needed a place to live." During the time (before 1935) that he was living there and paying insurance premiums, *the property was insured in favor of respondent and her mortgagee.* After 1935, respondent paid the premiums. Thus there are counter-balancing features attending decedent's payment of taxes and insurance and his occupancy. The weighing of these neutralizing features was the province of the trial court. Respondent's acts of ownership were unequivocal and clear cut.

When respondent in August, 1927, a year after signing the deed, mortgaged the property she was its owner of record. Her father knew about the mortgage. He took no part in it, and got none of the borrowed money. As an act of ownership it was open and notorious since it was a matter of public record. The making of a mortgage is, as the court said in *Donahue* v. *Sweeney,* 171 Cal. 388, 391 [153 P. 708], an act "tending to rebut the testimony of plaintiff regarding the alleged delivery of the deed." There were no equivocal or neutralizing features about the mortgage.

Next take the renewal of the insurance in the name of respondent, with loss payable to her mortgagee. If the deed was actually delivered in Mrs. Hobart's presence on July 3, 1926, with the intent that decedent, the grantee, should immediately become the absolute owner, it is difficult to reconcile (a) her negotiation of this renewal in respondent's name with (b) the passing of title from respondent to decedent five years before. Mrs. Hobart, as notary and witness, knew of the deed (it is conceivable she drew it) and as broker in the 1931 renewal she was the agent of the insured, the true owner, thus duty bound to see that such owner (whoever it was) was protected. If decedent held the "unconditional and sole" ownership when this renewal was made in the name of one who held no title, the whole insurance was jeopardized under familiar principles of insurance law. (See Ins. Code, §§ 2071-2.)

From the fact that the insurance was in respondent's name

the court could, and apparently did, draw the inference (seemingly inescapable) that when decedent arranged for the renewal in June, 1931, he knew that title then remained vested in his daughter. The circumstances are unexplainable on any other hypothesis.

It need hardly be added that this conspicuous act of ownership, proved by documentary evidence, was corroborative of respondent's testimony respecting intent. Incidentally, and in passing, the payment of premiums by decedent on property insured in respondent's name could well have been ruled out by the court as presumptive evidence of his ownership under section 1963, subdivision 12, *supra*.

Some time between 1935 (it was in 1935 that father and daughter became estranged) and decedent's death, during which time respondent paid all the insurance, there was a fire. Somebody in the house called respondent (because she had the insurance) respecting necessary repairs. Respondent had the repairs made and was indemnified for them by the insurance company. This, of course, was another unequivocal act of ownership.

The affidavit of January, 1933, is another piece of documentary evidence, and its importance cannot be discounted since it spoke on a material issue in a judicial proceeding. The truth of decedent's allegation that he had no property of any kind, depended on the underlying fact that the deed had not been delivered to him. The affidavit was made over two years prior to the *recordation* of the deed, but if, as appellant now contends, the affiant "had possession of this deed from the time it bear date" he then had title and had held it for over six years, since July 3, 1926. In that event he perjured himself. The court in the instant case had before it the presumption "that a person is innocent of crime or wrong" (Code Civ. Proc., § 1963, subd. 1) and the findings imply that the court gave the affiant the benefit of that presumption. The holding that the affidavit was truthful, rather than perjured, finds support in decedent's conduct in the insurance transaction which amounted to an admission, by conduct at least, that he was not the owner but respondent was. Both episodes are consistent with, and lend corroboration to, respondent's testimony respecting intent and her theory that title did not pass.

The language that affiant was "without money, means, *property or income of any kind* . . ." (emphasis added) was a direct averment that he held title to no real property.

What has just been said applies with equal force to decedent's testimony in the municipal court in March, 1935, that he owned no property, and to a lesser extent to his unsworn statement to his counsel at that time to the same effect. Both declarations were consistent with the affidavit of January, 1933, and with the insurance transaction; both corroborate respondent's testimony.

Thus it will be seen that appellant's contention that respondent's testimony was uncorroborated is not borne out by the record. We are satisfied that had she not testified at all, there would still have been ample substantial evidence (and for the most part documentary), to support the findings. There are in this case a number of facts established without contradiction from each of which the inference could be drawn that the deed was not delivered. When these facts are taken in combination, a case is made out which satisfies the rule (which operates in, and is for the guidance of, the trial court—see *Stromerson* v. *Averill*, 22 Cal.2d 808, 815 [141 P.2d 732] and *Viner* v. *Untrecht*, 26 Cal.2d 261, 267 [158 P.2d 3]) that the evidence to rebut the disputable presumptions and prima facie showing of delivery must be clear, convincing and satisfactory.

What was said in *Rice* v. *Carey*, 170 Cal. 748, 754 [151 P. 135], is applicable to the case at bar:

"The trial court's findings on disputed issues of fact are conclusive here, not only where the testimony of witnesses is in conflict with regard to the exact things said and done, but also where opposing inferences may be reasonably drawn from undisputed facts. Here the court drew the inference that the intent necessary to a valid delivery was lacking and with its conclusion in this regard the appellate court cannot interfere."

The court over objection admitted respondent's testimony with respect to a series of conversations between herself and Mrs. Hobart in which the latter said that decedent had been exerting pressure on her to release the deed and that because of his pressure she had finally released it. It is claimed that these conversations were inadmissible because hearsay, and that they were extremely damaging. There is a question just what parts of these conversations are or are not competent evidence. That question need not be decided since without them there was plenty of substantial and competent evidence to support the findings and judgment. It is not to be presumed, in such a case (tried without a jury),

that the court based its findings on any incompetent evidence. Conceding that it was error to admit at least some or even all of it, we are satisfied that it was not prejudicial. (Const., art. VI, § 4½.) See *Roy* v. *Salisbury,* 21 Cal.2d 176, 186 [130 P.2d 706]; *Frazure* v. *Fitzpatrick,* 21 Cal.2d 851, 858 [136 P.2d 566]; *Ford* v. *Lou Kum Shu,* 26 Cal.App. 203, 212 [146 P. 199], (hearing denied); *Roth* v. *Thomson,* 40 Cal. App. 208, 216 [180 P. 656], dealing with hearsay; *Watt* v. *Copeland,* 92 Cal.App. 161, 170 [267 P. 928], involving, as here, intent on delivery of deed (hearing denied); *Martin Music Co.* v. *Robb,* 115 Cal.App. 414, 423 [1 P.2d 1000], dealing with hearsay; *Ericson* v. *Steiner,* 119 Cal.App. 305, 308 [6 P.2d 298]; *Lincoln* v. *Averill,* 47 Cal.App.2d 335, 338 [117 P.2d 913], (hearing denied); *Cordi* v. *Garcia,* 56 Cal.App.2d 584, 589 [132 P.2d 887]; *Bisno* v. *Herzberg,* 75 Cal.App.2d 235, 241 [170 P.2d 973]; *Brock* v. *Fouchy,* 76 Cal.App.2d 363, 371 [172 P.2d 945].

Appellant urges error in the court's failure to make an explicit finding on the question of delivery. The complaint contained no allegation that the deed was delivered. It simply alleged decedent's ownership. Respondent specifically denied this allegation. In respondent's cross-complaint she alleged her ownership and appellant joined issue thereon by a general denial. Hence the issue raised by the pleadings was the broad one of ownership. On that issue the court found that respondent was the owner. Thus the findings followed the language of the pleadings which has been held sufficient (*Turner* v. *Turner,* 187 Cal. 632, 636 [203 P. 109]). See, also, *Colver* v. *Scarborough Co.,* 73 Cal.App. 421, 433 [238 P. 1096]. The findings also contain the language that the property at the time of decedent's death "was vested in defendant and cross-complainant . . .". Both the finding of ownership and the finding that the property was vested in respondent carry the implied finding that the deed had not been delivered. No harm was suffered by appellant by the absence of an explicit finding on delivery.

Appellant introduced respondent's petition for special letters of administration on her father's estate, alleging that it consists of "an alleged interest in real property and personal property as follows: An alleged interest and/or equity and/or right to possession in real property (describing this property)."

Appellant claims this is an admission by respondent that decedent owned the property. Respondent replies in sub-

stance that to speak of an "alleged" interest is not to admit ownership. The court apparently so viewed it.

Appellant and her sisters testified that they had seen in their father's possession a letter to him from respondent containing statements inconsistent with respondent's position. The letter in the form they described was not produced. The secondary evidence of its contents apparently did not convince the court.

The judgment is affirmed.

Nourse, P. J., and Dooling, J., concurred.