[Civ. No. 25336.   Second Dist., Div. One.   Aug. 28, 1961.]

EDITH DANENBERG, Respondent, v. RICHARD J. O'CONNOR, as Executor, etc., et al., Defendants; ANNETTE PASTOR, Appellant.

David G. Watts for Appellant.

James B. Fredericks for Respondent.

FOURT, J.—This is an appeal from a judgment quieting the title to certain real property in the plaintiff.

Lawrence W. Danenberg was married to the plaintiff on December 24, 1950. They took title to certain particular real property in 1952 as joint tenants. On December 2, 1958, plaintiff here brought an action in divorce against the husband alleging among other things:

"That since the marriage of the parties the defendant has treated the plaintiff with extreme cruelty and has wrongfully inflicted upon her grievous bodily injury and grievous mental suffering thereby . . ." She also alleged that "There is community and jointly owned property of the parties consisting in part as follows: The marital domicile at 428 El Medio, Pacific Palisades . . ." (The real property in question.) She requested "an equitable division of the community property."

The husband in a verified answer filed on December 9, 1958, specifically denied that the real property was the community property of the husband and wife and further set forth "defendant alleges that said marital domicile at 428 El Medio, Pacific Palisades, California, is now, and ever since its acquisition by the said parties has been, held by them in joint tenancy and is one-half the separate property of each of the said parties."

The husband filed a cross-complaint in divorce on December 9, 1958, wherein there was no mention of the real property.

In a "REQUEST FOR ADMISSIONS. C.C.P. 2033" filed on March 6, 1959, the husband requested the wife to admit: "That at all times since its acquisition by the parties hereto during 1951, the marital domicile known as 428 El Medio, Pacific Palisades, California, *has been, and now is held by them as joint tenants,* and the interests of each therein is their respective separate property." (Emphasis added.)

The wife thereupon filed an affidavit in effect saying that she had contributed her separate funds toward the purchase of the lot and in the building of the house thereon; also that since the marriage the parties treated the property as their community property and that she understood it to be community property.

During all of the times heretofore mentioned Richard J. O'Connor represented the husband in the divorce action and prepared the pleadings and appeared for and with the husband at the various preliminary hearings. On July 14, 1959, O'Connor was substituted out of the case and Denison, Diet-

rich and Anderson by Anderson became the husband's attorneys.

In a pretrial statement filed October 6, 1959, each side stated that in the event either one was entitled to a divorce the status of the property would be an issue.

In the pretrial order it is stated: "That there is standing of record in the name of the parties as joint tenants the residence property at 428 El Medio, Pacific Palisades" and that an issue in the case was "whether or not the property hereinbefore referred to is community or separate or joint tenancy property . . ."

At the trial the following occurred:

"Mr. Anderson: If you will pardon me a moment, Mr. Fredericks. I have, during the noon recess, gotten a transcript of exactly what was said, from Miss O'Connor, and I would be glad to read it, and if you are willing to stipulate to it, I will stipulate that is what we said. (Reading:)

"'Mr. Fredericks: I believe, if the Court please, there is some conflicting testimony, but I think, the outcome would be, in fairness to all sides, that it be stipulated that the home of the parties, set forth in the Complaint—in the Answer,— is joint tenancy property. It would come out that way.

"'The Court: The pre-trial order relates that it is, that it stands of record in the name of the parties as joint tenants. It is stipulated that it is joint tenancy.

"'Mr. Anderson: Joint tenancy, rather than community.

"'Mr. Fredericks: I believe that the testimony would bear out that stipulation.'

"Mr. Anderson: Now, I will stipulate that that was what was said at the time.

"Mr. Fredericks: So will I, if the Court please.

"The Court: There was a finding by the Court."

The minute entry of January 7, 1960, in the divorce case recites among other things: "The house and lot occupied by plaintiff as her residence, the court finds to be joint tenancy property, per stipulation heretofore made . . ." The interlocutory judgment provided in part: "The real property of the parties standing in their names as joint tenants and known as Lot 13, Block 114 of Tract 9300 is joint tenancy property."

That judgment became final without any appeal.

On January 26, 1959, after the divorce action was started and before it was tried the husband, Lawrence W. Danenberg, signed a document which purported to be a quitclaim deed to the property to a Miss Pastor, the appellant herein. Three

days later Miss Pastor made a purported quitclaim deed to Lawrence W. Danenberg of the property in question.

Richard J. O'Connor was the executor of the will of Lawrence W. Danenberg, and was at the times heretofore indicated the attorney for Lawrence W. Danenberg. He prepared the quitclaim deeds and notarized the signatures and kept physical possession of the deeds until the death of Lawrence W. Danenberg. Richard J. O'Connor testified that he recorded the deeds on January 27, 1960, after the death of Lawrence W. Danenberg. He further testified that shortly after the deeds were signed he placed the same in an envelope upon which he wrote in effect that the envelope contained the two deeds, and that such were to be delivered to the county recorder for recording in the event of the death of Lawrence W. Danenberg. He further related that he had talked with Lawrence W. Danenberg, the time of which conversation he was not at all certain, and that had Mr. Danenberg requested him to turn over the deeds to him he would have done so at any time. He, as the executor of the will of Lawrence W. Danenberg, made no claims of ownership of the property, paid no payments thereon, and paid no insurance, maintenance or repairs thereon.

When Denison, Dietrich and Anderson, by Anderson, had "the entire file" sent to him by O'Connor in July, it appears that O'Connor did not include with the file the envelope containing the two quitclaim deeds. O'Connor also had a will of Lawrence W. Danenberg (apparently drawn by someone other than O'Connor), in his possession which was not sent to Anderson with the divorce file. O'Connor testified that Lawrence W. Danenberg had asked him to check over the will and that he had done so and then had advised Danenberg to have a new will drawn naming a bank as the executor and further stated, "I was quite surprised, after Mr. Danenberg's death, that I hadn't prepared such a will, because I have a recollection that I did, but I guess I never got around to doing that." The will left practically all of the property "to a friend, Muriel Annette Pastor." Mr. Danenberg left $10 to his wife. It was not upon any instruction or request of Lawrence W. Danenberg that O'Connor retained the possession of the deeds, will and envelope at the time O'Connor was substituted out of the case.

Lawrence W. Danenberg died on January 23, 1960, about one week after the judgment of divorce was rendered.

O'Connor recorded the quitclaim deeds on January 27, 1960.

Plaintiff herein filed an appropriate affidavit of death of a

joint tenant on February 9, 1960. O'Connor was appointed the executor of the will of Lawrence W. Danenberg on February 25, 1960, and since that time, as heretofore indicated, has made no claim of any interest in the property.

The surviving joint tenant (wife of Lawrence W. Danenberg), and plaintiff here brought this action to quiet her title as against the executor of the will and Miss Pastor.

The court made extensive findings of fact and conclusions of law. Miss Pastor made no objections to the findings or conclusions of law at the time or immediately before the findings and conclusions were signed; she proposed no counterfindings nor did she request any special or other findings. Both defendants filed a notice of appeal. The executor did not perfect his appeal and filed no brief in the matter and that appeal has been dismissed. Miss Pastor now contends that the transactions between her and Lawrence W. Danenberg constituted a good and sufficient delivery of the deeds in question and that the court failed to make a sufficient finding on the supposed execution and delivery of the quitclaim deed by Lawrence W. Danenberg.

A reading of the entire record demonstrates that the evidence and the inferences to be drawn therefrom are sufficient to and do sustain the findings of fact and conclusions of law made by the court and the findings support the judgment.

■ Delivery of a deed depends upon the intention that title shall pass irrevocably. ■ Whether there was a good delivery or not is a question of fact. ■ The physical handing over of the piece of paper upon which certain words and figures are written and printed in and of itself and with nothing more does not constitute a good and sufficient delivery.

■ ". . . 'The delivery of a deed is not effected by a mere manual tradition of the instrument, unless the act "be accompanied with the intent that the deed shall become operative as such" [citation] i.e., that it shall presently pass title, without the reservation of any right of revocation or recall. [Citation.] Whether or not the requisite intent existed is a question of fact for the trial court or jury.' (*Hefner* v. *Sealey*, 175 Cal. 18, 19 [164 P. 898].)'' (*Counter* v. *Counter*, 104 Cal.App.2d 786, 789 [232 P.2d 551].)

■ In *Williams* v. *Kidd*, 170 Cal. 631, 637 [151 P. 1, Ann. Cas. 1916E 703] it was said:

"It is well settled that a person may make a conveyance of property and place it in the hands of a third party to be delivered to the grantee named in it on the death of the

grantor, and that such a delivery will be effectual to pass a present title to the property to the grantee, if the intention of the grantor is to make such delivery absolute and place it beyond the power thereafter to revoke or control the deed.

Where delivery is made under these circumstances and with this intention, it is fully operative and effective to vest a present title in the grantee, the grantor retaining only a life estate in the property and the third party or depositary holds the deed as a trustee for the grantee named in it. (*Bury* v. *Young,* 98 Cal. 451 [35 Am.St.Rep. 186, 33 P. 338]; *Moore* v. *Trott,* 156 Cal. 353, [134 Am.St.Rep. 131, 104 P. 578].)

''On the other hand it is equally well settled that where a deed is deposited with a third party to be handed to the grantee on the death of the grantor, unless this is accompanied by an intention on the part of the grantor that title to the property shall thereby immediately pass to the grantee, there is no delivery of the deed and consequently no title is transferred. If the deed is handed to the depositary without any intention of presently transferring title, but, on the contrary, the grantor intended to reserve the right of dominion over the deed and revoke or recall it, there is no effective delivery of the deed as a transfer of title. So, too, if it be the intention of the grantor when he deposits a deed that it shall only be delivered to the grantee by the depositary after the death of the grantor, and that the title is to vest only upon such delivery after his death, then the deed is entirely inoperative as constituting an attempt by the grantor to make a testamentary disposition of his property. This may only be done by will executed as required by the law of wills of this state, and a deed, the purpose of which is intended to be testamentary, cannot be given effect.''

Also in *Azevedo* v. *Azevedo,* 1 Cal.App.2d 504, 506 [36 P.2d 1078], it is set forth:

''. . . However, manual tradition alone is not enough; the transfer of possession must be with the intent of presently passing title and must not be hampered by any reservation of right of revocation or recall (*Follmer* v. *Rohrer,* 158 Cal. 755 [112 P. 544]); that is, in parting with the possession of the conveyance the grantor must intend thereby to divest himself of title. If he does there is an effective delivery. If he does not there is no delivery; and the solution of the question is to be determined from a consideration of all the evidence in the case. Moreover, whether there was such intent to pass present

202

title is purely a question of fact to be determined by the trial court or jury. (*Hansen* v. *Hansen*, 82 Cal.App. 786 [256 P. 290]; *Williams* v. *Kidd*, 170 Cal. 631 [151 P. 1, Ann.Cas. 1916E 703].) Accordingly it is held that a deed executed by a grantor with the intention of having it take effect only after his death and which he retains in his possession or under his control will be ineffectual to pass title for want of delivery. (*Fisher* v. *Oliver*, 174 Cal. 781 [164 P. 800]; *Hayden* v. *Collins*, 1 Cal.App. 259 [81 P. 1120].)''

▮ In *Whitlow* v. *Durst*, 20 Cal.2d 523, 524-525 [127 P.2d 530] the court stated:

''When intent is a material element of a disputed fact, declarations of a decedent made after as well as before an alleged act that indicate the intent with which he performed the act are admissible in evidence as an exception to the hearsay rule, and it is immaterial that such declarations are self-serving. Thus, in cases involving the delivery of deeds, declarations of the alleged grantor made before and after the making of the deed are admissible upon the issue of delivery, and it is immaterial that such declarations are in the interest of the party producing them. (*Williams* v. *Kidd*, 170 Cal. 631 [151 P. 1, Ann.Cas. 1916E 703]; *Donahue* v. *Sweency*, 171 Cal. 388 [153 P. 708]; *DeCou* v. *Howell*, 190 Cal. 741 [214 P. 444]; see McBaine, *Admissibility in California of Declarations of Physical or Mental Condition*, 19 Cal.L.Rev. 231, 251.) Likewise, in gift cases declarations made by the grantor before, contemporaneously, and subsequent to the alleged gift are admissible though the statements be self-serving. (*Sprague* v. *Walton*, 145 Cal. 228 [78 P. 645].)''

▮ In *Kelly* v. *Bank of America*, 112 Cal.App.2d 388, 398 [246 P.2d 92, 34 A.L.R.2d 578], it is stated:

''In determining the validity of the deed involved we must consider not only the intent of the grantor but also whether the deed was delivered to and accepted by the grantee as an unequivocal transfer of title to him. As was said by this court in *Reina* v. *Erassarret*, 90 Cal.App.2d 418, 426 [203 P.2d 72, 7 A.L.R.2d 1309]:

'' ' ''Delivery'' is a word of well-defined meaning in law. The elements are that the writing must be meant by the maker to take immediate effect and be presumably or in fact, *accepted by the other party*. The delivery and acceptance are of necessity simultaneous and correlative acts. The law does not force a man to take title to real property against his will. (*Hibberd* v. *Smith*, 67 Cal. 547 [4 P. 473, 8 P. 46, 56

Am.St.Rep. 726].) *Hence, the assent of the grantee is neces-sary in order to make a delivery effective and the deed opera-tive as such.' "* (Emphasis added.)

It is apparent in this case that Lawrence W. Danenberg did not intend by the quitclaim deed to Miss Pastor to divest himself of title to the property.     He obviously thought the property was in joint tenancy at the time of the divorce proceedings for in effect he so stated on at least two occasions. It is presumed "[t]hat a person is innocent of crime or wrong" (Code Civ. Proc., § 1963, subd. 1); and therefore the judge in the divorce proceedings presumed that he was not committing perjury. (See *Hill* v. *Hill,* 91 Cal.App.2d 592, 600 [205 P.2d 676].)     It might well be specu-lated that Lawrence W. Danenberg was attempting to deal with Miss Pastor in one fashion and with his wife in another fashion. In any event, having represented to one branch of the superior court in one proceeding that the property was in joint tenancy (in part at least it would seem to the end that the court would not be permitted to make an award thereof to the wife), neither he nor his representatives, nor anyone taking under or from him, should (now that Lawrence W. Danenberg is dead), say in effect that the property was not in joint tenancy at all and that Miss Pastor should take it under the will. The law does not work that way. It is obvious that Lawrence W. Danenberg dealt or attempted to deal in bad faith with his wife and an inference is proper under the circumstances that Miss Pastor knew what was being attempted. Miss Pastor did not see fit to testify as to her understanding of the transaction, or as to what consider-ation there was, if any, nor did she testify as to what her relationship was with Lawrence Danenberg or as to whether she accepted an unequivocal transfer to her or as to any other matter with reference to the controversy.

There were no written instructions by Lawrence Danenberg wherein he expressed the view that at the time of the leav-ing of the purported deeds with O'Connor he was then and there passing the title to the property to Miss Pastor.

Indeed it is interesting to note that Danenberg's own attor-ney who drafted the deeds stated in effect in his testimony that the deposit of the deeds in his office was subject to the whim and call of Lawrence W. Danenberg during his lifetime.

The trial judge had the duty to and he did weigh the evidence. He found against the appellant here and properly so.     With reference to the contention that the findings

were not specific enough to satisfy the appellant, suffice it to say that the finding that the plaintiff (widow), was the owner of the property and that the appellant had no interest in the same was entirely sufficient. The issue is—Who owns the property? The appellant did not ask for any finding on the matter of delivery. The court did find, among other things, as follows:

"2. That the decedent, L. W. Danenberg, a/k/a Lawrence W. Danenberg, did not during his life time convey or transfer his title or any interest of his in and to the property set forth in the complaint and known as Lot 13, Block 114 of Tract 9300 as per map recorded in Book 125, page 55, et seq. of Maps in the office of the County Recorder of Los Angeles County, to the defendant Annette Pastor, or to anyone else."

The court also found that the allegations of the cross-complaint of Miss Pastor were untrue.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.