Filed 5/12/15  Perez v. Wiesand CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| EDWARD L. PEREZ, | B251199 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC465205) |
| v. | |
| THEODORE WIESAND, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Conrad Aragon, Judge.  Reversed.

Veatch Carlson, Cyril S. Czajkowskyj; Greines, Martin, Stein & Richland, Robert A. Olson and Edward L. Xanders for Defendant and Appellant.

Law Offices of Rodney T. Lewin, Rodney T. Lewin and Laura I. Shidlovitsky for Plaintiff and Respondent.

_____

## INTRODUCTION

This action arises out of a family dispute over ownership of two properties. Plaintiff Edward L. Perez (Edward)[1] obtained a judgment following summary adjudication and a stipulation re judgment stating that he is the owner of the properties. Defendant Theodore Wiesand (Theodore) appeals from the judgment. Theodore argues that the trial court should not have granted summary adjudication for Edward because transfer of title to the two properties to Edward was made by Edward's grandfather Hector Garza (Hector Sr.) on October 6, 2010 *after* title was transferred to Edward's grandmother Elba P. Garza (Elba) on October 4, 2010, who subsequently transferred title to Theodore. Thus, Theodore contends that he is the owner of the two properties.

In his motion for summary judgment or, in the alternative, summary adjudication (summary judgment motion),[2] Edward contended that Hector Sr. transferred title to the properties to him on September 14, 2010 although the deeds were recorded on October 6, 2010, and therefore Edward is the owner of the two properties. We find that there is a triable issue of material fact as to when Hector Sr. transferred title to the properties to Edward, and that Edward has therefore failed to carry his burden in moving for summary adjudication.[3] We reverse.

---

[1] As do the parties, we refer to the family members by their first names to avoid confusion.

[2] Edward moved for summary judgment or, in the alternative, for summary adjudication of each cause of action. For ease of reference, we will refer to Edward's motion as the summary judgment motion, although the court ultimately granted summary adjudication as to only three causes of action.

[3] Because we find that Edward has failed to carry his burden in moving for summary adjudication, we need not reach Theodore's argument that the court erred in not considering his evidence filed in opposition to Edward's motion on procedural grounds.

## FACTUAL AND PROCEDURAL BACKGROUND

Given the complexity of the relationships between the family members and their interest in the properties, as well as the numerous pleadings filed in this case, we will discuss the background facts in detail below.

### A. *The Parties and Properties Involved in the Litigation*

The properties at issue are rental properties located at 236 and 238 South Avenue 55 in Los Angeles (the properties). The following facts are undisputed: Hector Sr. and his wife Elba purchased the properties in 2003. Hector Sr. and Elba placed the properties in the Hector and Elba Garza 2003 Trust (Garza Trust). The trust transferred the properties to Heritage Property Management, LLC (Heritage) in February 2010. Hector Sr. and Elba co-owned and co-managed Heritage, and each had the power independently to bind the company in all matters in the ordinary course of business.

According to the Garza Trust, attached as Exhibit A to the Complaint, Hector Sr. and Elba had seven children. Four of their children have some involvement with the properties. Their oldest daughter Elma L. Garza Perez is the mother of Edward, their grandson. Their daughter Rosalinda Garza-Wiesand (Rosalinda) is married to Theodore, their son-in-law. Theodore asserts that two other sons of Hector Sr. and Elba, namely Hector Garza (Hector Jr.) and Arthur Garza (Arthur), have abused and deceived their mother Elba.

Hector Sr. died at the age of 80 on August 8, 2011, shortly after this lawsuit was filed.

### B. *The Complaint and Answer*

On July 12, 2011 Edward filed a verified complaint against Theodore alleging causes of action for declaratory relief (first), quiet title (second), cancellation of instrument (third), and injunctive relief (fourth).

There are numerous transfers of the properties at issue in this action. The complaint alleges that on February 19, 2010, Hector Sr. and Elba, as trustees of the Garza Trust, transferred the properties to Heritage. Exhibits B and C to the complaint are grant deeds signed by Hector Sr. and Elba as trustees, dated February 12, 2010 and recorded on February 19, 2010, transferring the properties to Heritage.[4] The complaint alleges that in April 2010 Hector Sr., as manager of Heritage, transferred the properties by grant deeds to Edward in return for Edward's "hard work and loyalty," including serving as Hector Sr.'s driver. Exhibits E and F are grant deeds signed by Hector Sr. on behalf of Heritage, dated April 28, 2010, transferring the properties to Edward.

The central transactions at issue in this case occurred in September and October of 2010. It is undisputed that on September 14, 2010, Edward signed two grant deeds transferring the properties back to Heritage. These deeds are attached as exhibits G and H to the complaint, and appear to be signed by Edward on September 14, 2010 and recorded on September 28, 2010. In dispute, however, are the deeds attached to the complaint as exhibits I and J, which are grant deeds signed by Hector Sr. transferring the properties back to Edward.[5] The grant deeds bear the typewritten date of September 14, 2010. These documents were recorded on October 6, 2010.[6]

---

[4]     The complaint alleges transfer of the properties on February 19, 2010. The attached deeds show that they were signed on February 12 and recorded on February 19, 2010.

[5]     As we discuss below, according to Edward's declaration, Hector Sr. did not give a reason for requesting Edward to transfer the properties to Heritage on September 14, 2010, and then for Heritage through Hector Sr. to transfer the properties back to Edward on the same day.

[6]     Exhibits I and J to the complaint include the September 14, 2010 grant deeds transferring the properties from Heritage to Edward but not the recording stamps. However, the deeds with the October 6, 2010 recording stamps are attached to Theodore's answer and as exhibits filed in support of Edward's motion for summary judgment.

4

While Edward takes the position in his summary judgment motion that Hector Sr. transferred the properties back to Edward on September 14, 2010, the complaint alleges that Edward transferred the properties to Heritage on September 28, 2010, and that Hector Sr. transferred the properties back to Edward on October 6, 2010. Specifically, the complaint alleges: "Although, in or about September 28, 2010, at the request of [Hector Sr.], [Edward] transferred the [properties] to [Heritage], whose deeds were recorded as instrument Nos. 20101374361 and 20101374362, [Heritage] transferred the [properties] back to [Edward] on October 6, 2010, recording the transfers as instrument Nos. 20101427692 and 20101427693. Attached hereto as Exhibits 'G', 'H' 'I', and 'J' are true and correct copies of the deeds effectuating this transfer."

As we discuss below, Theodore argues that Edward should be bound by the allegation in the complaint that Hector Sr. transferred the properties to him on October 6, 2010, even though the deeds bear the typewritten date of September 14, 2010 and were recorded on October 6, 2010.

Another set of central documents in this case are the grant deeds signed in October 2010 purporting to transfer the properties from Heritage to Theodore. The complaint alleges that Elba transferred the properties from Heritage to herself by grant deeds dated October 4, 2010, and then transferred the properties to Theodore by grant deeds dated October 19, 2010. Exhibits K and L are the grant deeds purportedly signed by Elba on behalf of Heritage dated October 4, 2010 and October 19, 2010.[7]

Edward subsequently amended the complaint to add Elba as a Doe defendant. Theodore, representing himself, filed his answer on August 18, 2011, attaching copies of the September 14, 2014 grant deeds (Exhibits I and J to the complaint), but with handwritten notes saying, "fraud" and "bad notary used white out," as well as other handwritten notes.

---

[7]  The complaint alleges the October 19, 2010 transfer from Elba to Theodore but the exhibits provide the background that Elba first transferred the properties from Heritage to herself on October 4, 2010.

**C. *Edward's Motion for Summary Judgment***

On March 28, 2012 Edward filed his summary judgment motion. In his motion, Edward contends that he met his burden of proof to establish that his title to the properties had priority over Theodore's claim of title because Edward held title at the time Elba purported to transfer the properties to Theodore. Specifically, Edward argues that Hector Sr. transferred the properties to Edward by grant deeds dated September 14, 2010 whereas the grant deeds signed by Elba purportedly transferring the properties to herself (and then later to Theodore) were signed on October 4, 2010. At issue in the motion is whether Hector Sr. transferred the properties to Edward on the September 14, 2010 date typewritten on the grant deeds, as contended by Edward, or on the October 6, 2010 date of recording, as contended by Theodore.

**1. *Edward's Separate Statement of Undisputed Facts***

Edward filed a separate statement of undisputed facts in support of his motion, which contains the following facts in chronological order:

1. Hector Sr. and Elba purchased the properties in June 2003. At the time, they were settlors and trustees of the Garza Trust.

2. On January 19, 2010 Hector Sr. and Elba formed Heritage as a limited liability company. Each of them had a 50 percent ownership interest in the company.

3. On February 19, 2010 Hector Sr. and Elba, as trustees of the Garza Trust, transferred ownership of the properties to Heritage by grant deeds, which were recorded.

4. On March 30, 2010 Hector Sr. and Elba executed an operating agreement for Heritage. The operating agreement provided that "'the business of the Company shall be managed by one or more Managers . . . . Any Manager may bind the Company in all matters in the ordinary course of business.'"

5. In April 2010 Hector Sr., in his position as manager of Heritage, transferred the properties to Edward by grant deeds, which were then recorded. The separate statement references Exhibits J and K to Edward's declaration, which are the grant deeds signed on April 26, 2010 and recorded on April 30, 2010.

6

6. On September 14, 2010, at Hector Sr.'s request, Edward executed two grant deeds transferring the properties back to Heritage, and the deeds were recorded on September 28, 2010. On September 14, 2010 Hector Sr., as manager of Heritage, executed two grant deeds to effectuate a transfer of the two properties back to Edward. These are the deeds in dispute, as discussed further below.

7. On October 4, 2010 Elba, in her position as manager of Heritage, executed two grant deeds purporting to transfer ownership of the properties from Heritage to herself.

8. On October 6, 2010 Edward recorded the September 14, 2010 grant deeds transferring the properties from Heritage back to him.

9. On October 12, 2010 Elba recorded the October 4 grant deeds transferring the properties to herself.

10. On October 19, 2010 Elba executed two grant deeds transferring title to the properties to Theodore; Theodore recorded the deeds on the same day.

11. Theodore subsequently evicted Edward from the properties, asserting that he was the rightful owner of the properties. Edward had lived there since 2007. Theodore also told the tenants on the properties to pay rent to him instead of to Edward.

2. *Declarations in Support of Motion for Summary Judgment*

Edward filed declarations with supporting documentation by Hector Sr., Edward and his attorney Laura Shidlovitsky, as well as a request for judicial notice of various documents.

In Hector Sr.'s declaration, he states: "I caused [Heritage] to transfer the [properties] back to Edward on October 6, 2010. [¶] Specifically, I as the manager and authorized agent of [Heritage], executed two grant deeds dated October 6, 2010, in which [Heritage] as grantor granted the [properties] to Edward Perez. . . . [¶] The transfers of the [properties] to Edward were recorded with the Los Angeles County Recorder's Office . . . . Attached hereto as Exhibits "G" and "H" are true and correct copies of the deeds effectuating this transfer. [¶] I advised my wife and daughter, Rosalinda Garza-

7

Wiesand, of the transfers of the [properties] to Edward Perez by [Heritage] shortly after the transfers were effectuated on October 6, 2010."

Theodore argues on appeal that Hector Sr.'s declaration should have defeated Edward's motion for summary judgment because it stated that the properties were transferred on October 6, 2010—after Elba's transfer of the properties. Edward argues that the deeds attached to Hector Sr.'s declaration are dated September 14, 2010, and relies on his own declaration. Edward states in his declaration: "Concurrently with my executing the deeds pursuant to which I transferred the [properties] back to Heritage . . . , my grandfather presented me with two grant deeds, also dated September 14, 2010, executed by him pursuant to which Heritage . . . transferred ownership of the [properties] back to me. I accepted these transfers and recorded the deeds with the Los Angeles County Recorder's Office on October 6, 2010 . . . ."[8]

The other grant deeds referenced in the undisputed statement of facts are also attached to the declarations of Edward, Hector Sr. or Shidlovitsky, but they are not in dispute.

### 3. *Theodore's Opposition*

Theodore filed an opposition to Edward's summary judgment motion on May 24, 2012, representing himself. In his opposition, Theodore argues that Edward "fraudulently RE-RECORDED DEEDS on 10-06-10 and again the same DEEDS on 10-27-10 knowing[] that the propert[ies were] sold to Defendant THEODORE WIESAND on 10-19-10." Theodore appears to argue in his opposition that Edward fraudulently

---

[8] The grant deeds transferring the properties from Heritage to Edward dated September 14, 2010 and the October 6, 2010 recording pages are attached as Exhibits G and H to Hector Sr.'s declaration and Exhibits N and O to Edward's declaration. The grant deeds transferring the properties from Elba to herself dated October 4, 2010 and the October 12, 2010 recording pages are attached as Exhibits U and V to the Shidlovitsky declaration. The grant deeds transferring the properties from Elba to Theodore dated October 19, 2010 and the recording pages bearing the same date are attached as Exhibits W and X to the Shidlovitsky declaration.

recorded the deeds on October 6, 2010 although Elba had already transferred the properties to herself on October 4, 2010, and then later transferred them to Theodore.

The opposition attaches as Exhibit 1 what is entitled an "Affidavit from Edward L. Perez" (Edward Affidavit), which purports to be a letter from Edward to his attorney Shidlovitsky. The letter states that "Exhibits G and I [September 14, 2010 grant deeds to Edward] were white[d] out and re-recorded again to place my name fraudulently as owner . . . . [¶] Theodore F. Wiesand is the legal owner . . . ." However, no authentication of the letter is provided to the court.

The opposition also attaches as Exhibits 7 and 8 copies of the September 14, 2010 grant deeds and October 6, 2010 recording pages with handwritten notes that say, "fraud," "8 days later? Why?" (referring to the October 6, 2010 recording stamp), and other handwritten markings.

### 4. *Theodore's Response to Disputed and Undisputed Facts*

On June 7, 2012 Theodore filed a "response to disputed and undisputed facts in opposition to sanctions," with supporting documents, which the court treated as a separate statement of disputed and undisputed facts. The response states that the facts asserted by Edward relating to the transfer of the properties from Hector Sr. to Edward are "disputed." However, the response only attaches as evidence multiple documents relating to the eviction of Edward and others from one of the properties, 236 South Avenue 55, and the September 14, 2010 deeds with handwritten markings and the October 6, 2010 recording date crossed out by hand. Theodore did not submit any evidence directly addressing the transfer dates other than the grant deeds.

On June 8, 2012 Edward filed objections to Theodore's evidence and a reply asserting that the opposition was procedurally defective and failed to present any admissible evidence showing a material issue of fact as to title to the properties.

9

5. *The Hearing and the Trial Court's Ruling on the Summary Judgment Motion*

At the hearing on June 15, 2012, the trial court granted summary adjudication as to Edward's first cause of action for declaratory relief, second cause of action to quiet title, and third cause of action for cancellation of instrument. The court sustained all of Edward's evidentiary objections to Theodore's evidence and granted Edward's request for judicial notice of the various grant deeds at issue and the Articles of Organization for Heritage, among other documents.

### a. **The June 15, 2012 Hearing**

At the hearing on Edward's summary judgment motion, Rosalinda, who argued the matter on behalf of Theodore, asserted that Edward's documents were fraudulent, that his attorneys were lying, and that they were covering up evidence. The court pointed out that it was required "to decide the case on admissible evidence," and "[t]he plaintiffs have objected to the evidence that you presented because the evidence you presented was not in the proper form, it was not authenticated, and there was no foundation as to the legitimacy of any of the documents that you filed." The court explained that "any of the handwriting on these deeds that says fraud or all that other information, that's just not admissible evidence. . . . I have no recourse in this case but to go ahead and grant the motion for summary judgment that has been presented."

### b. **The Court's Order Granting Summary Adjudication**

On August 13, 2012 the court filed a signed order granting summary adjudication as to Edward's first, second, and third causes of action. In its order, the court held that Theodore's "opposition is procedurally defective and is not considered by the court and it does not raise a triable issue of fact." Specifically, the court held that Theodore failed to provide a separate statement of undisputed facts that provides "sufficient grounds to grant

10

the motion," citing to Code of Civil Procedure section 437c, subdivision (b)(3).[9] The court held that Theodore's separate statement filed on June 7, 2010 was required to be filed by June 1, 2012 (14 days before the hearing), "is untimely and is disregarded as [Edward] has not had any opportunity to address it in Reply," citing to subdivision (b)(2) of section 437c.

The court proceeded to address the opposition and separate statement on the merits, holding that Theodore "fails to raise a triable issue that the propert[ies were] transferred from Heritage to [Edward] before [Elba] signed the deed[s] transferring the propert[ies] from Heritage to herself and well before the propert[ies were] transferred from [Elba] to [Theodore]."

The court also held that Theodore's "evidence is inadmissible. . . . [Theodore] has not provided any foundation or authentication for the documents, particularly [Exhibit] 1, which purports to be an affidavit signed by [Edward], admitting that the transfers from [Hector Sr.] were erroneous. [Section] 437c[, subdivision] (d) requires that the evidence be admissible." The court pointed out that "handwritten alterations in the deeds attached to [Theodore]'s Opposition are likewise inadmissible. . . . [Theodore] wants the court to take judicial notice of the handwritten alterations, indicating 'Fraud' and including a purported statement by [Edward]. There is no foundation for or authentication of the evidence."

The court then explained the basis of its grant of summary adjudication: "The undisputed facts establish that [Edward] has fee title via grant deeds from Heritage . . . , signed by Hector [Sr.] as agent. . . . The subsequent transfer of the propert[ies] by Heritage was ineffective. . . . [Theodore] failed to provide a triable issue of fact as to his claim of ownership of the Subject Property by way of a grant deed signed by Elba . . . in October 2010. [¶] . . . [¶] [Edward] has established a superior claim to the propert[ies] because [they were] conveyed to him before [they were] purportedly conveyed to

---

[9]     Statutory references are to the Code of Civil Procedure, unless otherwise indicated.

11

[Theodore] by [Elba]. A deed is valid upon delivery of the deed to and acceptance by the grantee."

The court made findings of fact that Hector Sr. and Elba were management members of Heritage with the power to bind Heritage and that on September 14, 2010, Hector Sr. signed two grant deeds transferring the properties back to Edward. The court also found that Elba signed two deeds transferring the properties on behalf of Heritage to Elba, which she subsequently transferred to Theodore.

The court concluded: "The undisputed facts establish that by the time [Elba] purported to transfer the propert[ies] from Heritage to herself on 10/4/10, which is when she signed the grant deed, the propert[ies] had previously been transferred by Heritage to [Edward] on 9/14/10, Exhibits N and O. Heritage no longer owned the propert[ies] at the time of transfer to [Elba]."[10]

## D. *Theodore's Cross-motion for Summary Judgment*

On April 12, 2012 Theodore, representing himself, filed a "cross motion for judgment to quiet title or dismissal of entire action," which Edward and the court treated as a cross-motion for summary judgment.[11] Theodore claims in the motion that he had title to the properties because he bought them from the rightful owner, Elba, and that

---

[10] Theodore filed two motions for reconsideration, both of which were supported by the same inadmissible evidence he previously attempted to submit, and additional evidence the court found did not comply with the requirement to be "new" evidence under section 1008, subdivision (a). The trial court denied both motions.

[11] While Theodore discusses his cross-motion for summary judgment in the discussion of the facts in his opening and reply briefs, Theodore focuses his legal arguments exclusively on Edwards's motion for summary judgment or in the alternative summary adjudication. Further, Theodore appeals from the judgment entered after summary adjudication and the stipulation to dismiss Elba's claims. He does not raise any claims of error regarding his own motion for summary judgment. Therefore, any claim of error by the trial court in denying his motion for summary judgment has been forfeited. (*Title G. & T. Co. v. Fraternal Finance Co.* (1934) 220 Cal. 362, 363; *Christoff v. Union Pacific Railroad Co.* (2005) 134 Cal.App.4th 118, 125.)

12

Hector Sr. did not own the properties at the time he purportedly deeded the properties to Edward. Theodore filed a significant number of exhibits in support of his cross-motion, including the Edward Affidavit and other miscellaneous documents, from bankruptcy documents to copies of checks, many with handwritten notes. None of the documents are in any way authenticated or even discussed to show their relevance.

The trial court denied the motion as untimely for failing to give the statutory notice of 75 days plus 5 days for mailing as required by section 437c, subdivision (a). The court noted that the 75-day "rule applies equally to self-represented persons," citing *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985. The trial court denied Edward's request to set an order to show cause re sanctions.

## E. *Elba's Cross-complaint and First Amended Cross-complaint*

On April 23, 2012 Elba filed a cross-complaint for quiet title and damages for elder abuse against Rosalinda and Theodore, Edward, Hector Jr. and Heritage. The gravamen of her cross-complaint is that Rosalinda, Theodore, Edward and Hector Jr. took advantage of Hector Sr. and Elba in order to gain ownership and control of the properties. Elba alleges that Theodore and Edward have made claims to the properties based on deeds that were "procured through manipulation, coercion or undue influence."

On June 5, 2012 counsel for Elba and Edward stipulated that the trial court's ruling on Edward's summary judgment motion would not affect any of Elba's rights or remedies. As we discuss below, on appeal Theodore argues that, as a result of Elba's cross-complaint, she was an indispensable party to the summary judgment motion.

## F. *Proceedings Leading to Entry of Judgment*

On September 7, 2012 the court dismissed Edward's fourth cause of action for injunctive relief without prejudice, as requested by Edward. On June 13, 2013 Edward and Elba filed a "Stipulation Re Judgment," stating that the parties had settled the action and that title to the properties would be quieted in favor of Edward in accordance with the summary adjudication of Edward's complaint against Theodore. The stipulation also

13

states that the deeds dated April 26, 2010 transferring the properties from Heritage to Edward and the deeds dated September 14, 2010, transferring the properties from Edward to Heritage and back to Edward are "valid transfers." Further, the stipulation states that the October 4, 2010 deeds purporting to transfer the properties from Heritage to Elba and the October 19, 2010 deeds purporting to transfer the properties from Elba to Theodore were "invalid and void."

On July 1, 2013 the court entered judgment in favor of Edward, stating that Edward "was and now is the owner in fee simple absolute" of the properties, and that "[n]either Defendant Theodore Wiesand nor Defendant Elba P. Garza has any right, title, interest, estate or lien in or on" the properties. At Elba's request, the court dismissed her cross-complaint without prejudice.

## DISCUSSION

### A. *Standard of Review*

In reviewing an order granting summary adjudication, "'we apply the same de novo standard of review that applies to an appeal from'" a summary judgment motion. (*City of Glendale v. Marcus Cable Associates, LLC* (2014) 231 Cal.App.4th 1359, 1376; see *Powerine Oil Co., Inc. v. Superior Court* (2005) 37 Cal.4th 377, 390.) Summary adjudication properly is granted if there is no question of material fact as to a cause of action, and the issues raised by the pleadings may be decided as a matter of law. (§ 437c, subds. (c), (f)(1); *Biancalana v. T.D. Service Co.* (2013) 56 Cal.4th 807, 813.)

"In moving for summary [adjudication], a 'plaintiff . . . has met' his 'burden of showing that there is no defense to a cause of action if' he 'has proved each element of the cause of action entitling' him 'to judgment on that cause of action. Once the plaintiff . . . has met that burden, the burden shifts to the defendant . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto. The defendant . . . may not rely upon the mere allegations or denials' of his 'pleadings to show that a triable issue of material fact exists but, instead,' must 'set forth the specific

14

facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto.' (. . . § 437c, subd. (*o*)(1).)" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Id*. at p. 850, fn. omitted; *Travelers Property Casualty Co. of America v. Superior Court* (2013) 215 Cal.App.4th 561, 574.)

On a summary judgment motion, the court """"is limited to facts shown by the evidentiary materials submitted, as well as those admitted and uncontested in the pleadings."""" (*AmerUS Life Ins. Co. v. Bank of America, N.A.* (2006) 143 Cal.App.4th 631, 638; *Sacks v. FSR Brokerage, Inc.* (1992) 7 Cal.App.4th 950, 962.) A party opposing a motion for summary judgment must rely on admissible evidence. (§ 437c, subd. (d); *People ex rel. Trutanich v. Joseph* (2012) 204 Cal.App.4th 1512, 1520.)

Theodore asserts four arguments for reversing the trial court's order granting summary adjudication. First, he argues that Edward should be bound by the allegation in his complaint that the properties were transferred on October 6, 2010. Second, he argues that Edward did not meet his burden on summary judgment because his own evidence showed that the properties were transferred on October 6, 2010, namely, Hector Sr.'s declaration. Third, Theodore argues that the motion should have been denied because Edward failed to join Elba as an indispensable party. Finally, Theodore argues that the court abused its discretion by failing to consider Theodore's procedurally defective opposition, statement of undisputed issues and motions for reconsideration.

We find that the statement in Hector Sr.'s declaration that he transferred the properties to Edward on October 6, 2010 creates a triable issue of fact, and therefore Edward failed to meet his burden in moving for summary judgment.[12] We reverse on this basis, and therefore do not reach Theodore's other arguments.

---

[12]     Edward claims that Theodore's arguments have been forfeited on appeal because he failed to raise them below. (*DiCola v. White Brothers Performance Products, Inc.* (2008) 158 Cal.App.4th 666, 675-676; *Zimmerman, Rosenfeld, Gersh & Leeds LLP v.*

15

**B.** *Edward Did Not Meet His Initial Burden of Producing Evidence To Support Summary Adjudication on His Claims*

Theodore contends that Edward failed to meet his burden of producing evidence to show that there was no triable issue of material fact as to ownership of the properties in light of Hector Sr.'s statement that he transferred the properties to Edward on October 6, 2010. We agree.

Civil Code section 1039 provides: "Transfer is an act of the parties, or of the law, by which the title to property is conveyed from one living person to another." The time at which a property has been legally "transferred" is dependent on factual determinations as to delivery and the grantor's intent. (*Mecchi v. Picchi* (1966) 245 Cal.App.2d 470, 482.) Transfer of property is effected by "delivery of the conveyance with intent to transfer the title . . . ." (*Perry v. Wallner* (1962) 206 Cal.App.2d 218, 221; see also *Hinshaw v. Hopkins* (1940) 37 Cal.App.2d 230, 237 ["[i]t is essential to the validity of a transfer of real property that there be a delivery of the conveyance with intent to transfer the title"].)

Delivery of a deed without the intent immediately to effect a transfer of title does not transfer the property at the time of physical delivery. (See *Estate of Pieper* (1964) 224 Cal.App.2d 670, 686, 688 [finding decedent intended to transfer title at time of death, not at time of physical delivery of deed based on facts including that decedent continued to live in home until death]; *Danenberg v. O'Connor* (1961) 195 Cal.App.2d 194, 203 [finding decedent "did not intend by the quitclaim deed to [a friend] to divest himself of title to the property" where decedent gave the deed to his attorney and retained full control over the property until his death]; see also *Blackburn v. Drake* (1963) 211

---

*Larson* (2005) 131 Cal.App.4th 1466, 1488-1489.) However, with respect to Theodore's argument that there is a disputed question of fact as to when Hector Sr. transferred the properties to Edward, we find this issue was raised below. Theodore argued in his opposition that Edward fraudulently recorded the grant deeds on October 6, 2010 although the properties had already been transferred first to Elba (on October 4, 2010), and then to Theodore on October 19, 2010.

16

Cal.App.2d 806, 811 ["[i]ntent to pass title is an essential element of delivery and the question of intent is a question of fact to be determined by the trial court or jury upon all the circumstances surrounding the transaction"].)[13]

As the court held in *Estate of Pieper*, "'[i]n addition to physical delivery, and an acceptance by the grantee, to constitute a valid delivery there must exist a mutual intention on the part of the parties, and particularly on the part of the grantor, to pass title to the property immediately. In other words, to be a valid delivery, the instrument must be meant by the grantor to be presently operative as a deed, that is, there must be the intent on the part of the grantor to divest himself presently of the title.'" (*Estate of Pieper*, *supra*, 224 Cal.App.4th at p. 684.)

We find in this case that there is a disputed question of fact as to the date on which Hector Sr. intended to transfer title to the properties to Edward. Edward states in his declaration that "my grandfather presented me with two grant deeds, also dated September 14, 2010, executed by him pursuant to which Heritage . . . transferred ownership of the [properties] back to me. I accepted these transfers and recorded the deeds with the Los Angeles County Recorder's Office on October 6, 2010 . . . ."

---

[13]     The recording date is not dispositive of the date of transfer, as recordation of the deed is not required to transfer title. (See *Hotaling v. Hotaling* (1924) 193 Cal. 368, 384; *RNT Holdings, LLC v. United General Title Ins. Co.* (2014) 230 Cal.App.4th 1289, 1296 [recording of trust deeds not required for them to be valid].) Rather, "[t]he recording of an instrument gives notice to the world of the transfer but does not add to its efficacy as a complete conveyance of title." (*Chaffee v. Sorensen* (1951) 107 Cal.App.2d 284, 289; see *Haynes v. EMC Mortgage Corp.* (2012) 205 Cal.App.4th 329, 336 ["'[t]he purpose of the recording statutes is to give notice to prospective purchasers or mortgagees of land of all existing and outstanding estates, titles or interest, whether valid or invalid, that may affect their rights as bona fide purchasers'"].) Additionally, the date a deed or other document is notarized does not carry legal significance. "Nothing requires a notary to acknowledge a document at the same time it is executed, and even a lengthy delay between the execution of the document and its acknowledgment does not invalidate the document. [Citations.]" (*Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1496; cf. *Lewis v. Booth* (1935) 3 Cal.2d 345, 349 [acknowledgment before notary "not essential to a valid assignment of the deed of trust"].)

17

By contrast, however, Hector Sr. states in his declaration: "I caused [Heritage] to transfer the [properties] back to Edward on October 6, 2010. [¶] Specifically, I as the manager and authorized agent of [Heritage], executed two grant deeds dated October 6, 2010, in which [Heritage] as grantor granted the [properties] to Edward Perez. . . . My intention in executing the deeds was always to effectuate the transfer of the [properties] from [Heritage] to Edward Perez. [¶] The transfers of the [properties] to Edward were recorded with the Los Angeles County Recorder's Office . . . . Attached hereto as Exhibits 'G' and 'H' are true and correct copies of the deeds effectuating this transfer. [¶] I advised my wife and daughter, Rosalinda Garza-Wiesand, of the transfers of the [properties] to Edward Perez by [Heritage] shortly after the transfers were effectuated on October 6, 2010."

In light of the fact that Hector Sr. attached a copy of the deeds dated September 14, 2010 to his declaration, it is a fair reading of his declaration that Hector Sr. signed the deeds on September 14, 2010. However, a plain reading of Hector Sr.'s declaration, including his statements that he caused Heritage "to transfer the [properties] back to Edward on October 6, 2010," and that he told his wife and daughters about the transfers "shortly after the transfers were effectuated on October 6, 2010," supports an inference that he intended to effectuate a transfer of the properties to Edward on October 6, 2010.

Accordingly, taking the declarations of Edward and Hector Sr. together, both of which were filed in support of Edward's motion for summary judgment, there is a triable issue of fact as to when title to the properties was transferred by Hector Sr. to Edward. Therefore, Edward failed to meet his burden of proof to show that he held title to the properties in moving for summary adjudication, and the trial court erred in granting Edward's motion. (§ 437c, subds. (c), (f)(1); *Biancalana v. T.D. Service Co.*, *supra*, 56 Cal.4th at p. 813; *Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 849.)

18

## DISPOSITION

The judgment is reversed.  Theodore is to recover his costs on appeal.


FEUER, J.[*]


We concur:


PERLUSS, P. J.


ZELON, J.

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.